TODD A. NOAH (SBN 152328)
PAUL K. TOMITA (SBN 188096)
DERGOSITS & NOAH LLP
Four Embarcadero Center, Suite 1450
San Francisco, California 94111
Tel: (415) 705-6377
Fax: (415) 705-6383
E-mail:  tnoah@dergnoah.com
         ptomita@dergnoah.com

Attorneys for Plaintiff MMJK, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MMJK, INC.<br><br>Plaintiff,<br><br>vs.<br><br>ULTIMATE BLACKJACK TOUR, LLC<br><br>Defendant. | Case No. C 07 03236 BZ<br><br>**DECLARATION OF JASON KELLERMAN IN SUPPORT OF PLAINTIFF MMJK, INC.'S MOTION FOR PRELIMINARY INJUNCTION** |

I, Jason Kellerman, declare under penalty of perjury that the following is true and correct:

1. I submit this declaration in support of MMJK, Inc.'s ("MMJK") motion for preliminary injunction. I have personal knowledge of the facts contained herein and, if called as a witness, I could and would testify competently thereto.

2. I am the President and Chief Executive Officer of MMJK and have been in that capacity since November, 2004. MMJK provides online gaming services at its Web site www.betzip.com.

3. MMJK has been operating this Web site since November 2005 and is just beginning to gain some recognition amongst online gamers.

4. On June 17, 2007, I learned that defendant Ultimate Blackjack Tour, LLC ("UBT") was offering online gaming services on its Web sites www.clububt.com and www.playubt.com, which I

-1-

believed to be infringing our U.S. Patent No. 7,094,154 ("the '154 patent"). A few months earlier, I also learned that UBT was aware of our Web site and patent (prior to the time it began hosting online tournaments that pay out prizes of immediate value and require entrants to either pay a subscription fee or utilize an "alternative means of entry" to enter). I immediately contacted my patent counsel and informed him about this infringement because UBT's online gaming services that it offers on its Web site directly competes with the services on our Web site.

5. The continued operation of UBT's Web site will irreparably harm MMJK's business. The availability of UBT's infringing service leads to a loss of market share for our services at www.betzip.com. UBT's continuing infringement is attracting new players to its Web sites that would otherwise play at our Web site.

6. This loss of market share is happening at a critical time in this market's development. Recently, a federal law called the Unlawful Internet Gambling Enforcement Act (UIGEA) was passed, making it illegal for financial institutions to enable transactions between U.S. consumers and online gambling sites, and causing several online gambling Web sites, such as www.partypoker.com, to exit the U.S. market. This law did not apply to the services provided by us at www.betzip.com as it is not a gambling site because it offers a free alternative method of entry into the tournaments offered on our Web site other than through subscriptions only. The result of the passage of the UIGEA is that millions of U.S. consumers are now looking for alternative places to play online poker, and I believe www.betzip.com is their only legal option (in terms of a subscription-based service that offers tournaments that pay out prizes of immediate value). Our method of providing online game tournaments, which include alternative methods of entry, is described and claimed in the '154 patent.

7. MMJK will not have the same opportunity to capture market share lost to UBT once the market matures. Indeed, it is well known in this industry that if a provider of online gaming services reaches a point of "critical mass" in terms of numbers of customers, it is nearly impossible for other providers to achieve comparable market shares. PartyPoker, for example, was able to achieve over a 50% market share of online poker players by establishing a critical mass of customers over a four year period. Once they achieved a certain size (in terms of numbers of customers and hosted games), their

DECLARATION OF JASON KELLERMAN IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
Case No. C 07 03236 BZ

growth actually accelerated and they achieved this dominant market share position. This occurred because consumers wanted to play at the site with the largest number of hosted games and the largest prize pools – since more players drove more revenue which in turn allowed PartyPoker to offer larger prize pools, it resulted in a positive "snowball effect" in terms of PartyPoker's ability to acquire more customers. It is not unlike the network effect that has enabled sites like eBay to dominate the online auctions market. The result was that PartyPoker achieved over 50% market share and the next largest competitor had a fraction of PartyPoker's market share. If players can play in online tournaments (that pay out prizes of immediate value and require entrants to either pay a subscription fee or utilize an "alternative means of entry" to enter) at UBT's Web site, this will result in permanent subscriber loss to MMJK, and there is a significant risk that MMJK will be unable to ever reach a point of critical mass.

8. UBT has other marketing capabilities that MMJK does not have, such as relationships with large television networks such as CBS and Superstation WGN that could be leveraged to drive broad based distribution to millions of viewers. UBT already has established consumer brand recognition of its card tournaments from its television shows. In addition, UBT can use these relationships to advertise its Web sites and online tournaments during its television shows. If UBT were able to leverage these assets to achieve critical mass before MMJK does, it would irreparably harm our business.

9. Additionally, we are in a number of business development discussions with large companies interested in offering subscription based poker to their customers. These deals have the potential to drive large numbers of customers to our business. If UBT were to secure one or more of these deals (instead of MMJK securing these deals), it would irreparably harm our business. UBT's mere presence in these discussions could result in unfavorable economics for us were we to secure the deals. It is our understanding that UBT has been actively pursuing one or more of these deals.

10. Since MMJK is a relatively new company with only one primary service, loss of market share and of customer base as a result of infringement cause severe injury to MMJK, which cannot be

///

///

DECLARATION OF JASON KELLERMAN IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
Case No. C 07 03236 BZ

1 | remedied by monetary damages.

3   Executed this 11th day of July, 2007, at San Francisco, California.

_____
Jason Kellerman

DECLARATION OF JASON KELLERMAN IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
Case No. C 07 03236 BZ