1  GREENBERG TRAURIG, LLP
   MATTHEW S. STEINBERG (SBN 82969)
2  STEVE P. HASSID (SBN 219913)
   2450 Colorado Avenue, Suite 400 East
3  Santa Monica, California 90404
   Telephone: (310) 586-7700
4  Facsimile: (310) 586-7800
   Email: steinbergm@gtlaw.com; hassids@gtlaw.com
5
   Attorneys for Defendants
6  Ultimate Blackjack Tour, LLC

7

8                    UNITED STATES DISTRICT COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 | MMJK, Inc.,                          | CASE NO. C 3:07-CV-03236-BZ
12 |            Plaintiff,                | DEFENDANT ULTIMATE BLACKJACK TOUR, LLC'S MEMORANDUM OF
13 | vs.                                  | POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF MMJK,
14 | ULTIMATE BLACKJACK TOUR, LLC         | INC'S MOTION FOR PRELIMINARY INJUNCTION
15 |            Defendant.                |
16 |                                      | [Filed Concurrently with Declaration of L. Kenneth Rosenthal, Declaration of
17 |                                      | Sanford I. Millar, Affidavit of Paul Forrest Hickman; and Objections to Evidence
18 |                                      | Proffered by Plaintiff]
19 |                                      | DATE:     August 15, 2007
20 |                                      | TIME:     10:00 a.m.
                                            LOCATION: Courtroom G
21                                          JUDGE:    Hon. Bernard Zimmerman

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

|  | | Page No. |
|---|---|---|
| I. | PRELIMINARY STATEMENT | 1 |
| II. | SUMMARY OF ARGUMENT | 1 |
| III. | STATEMENT OF FACTS | 2 |
| IV. | THE MOTION FOR PRELIMINARY INJUNCTION SHOULD BE DENIED BECAUSE MMJK HAS FAILED TO MEET ITS HEAVY BURDEN FOR THIS EXTRAORDINARY RELIEF | 3 |
|  | A. MMJK Will Not Succeed on the Merits | 4 |
|  |    1. UBT Does Not Infringe Any Claims Of The '154 Patent | 5 |
|  |    2. The '154 Patent Is Invalid | 7 |
|  |       a. The Prior Art Anticipates The Claims Of The '154 Patent And Therefore The '154 Patent Lacks Novelty | 7 |
|  |       b. Even If Not Anticipated, The '154 Patent Is Invalid As Obvious Over The Prior Art | 7 |
|  |    3. The '154 Patent Is Unenforceable Based On Inequitable Conduct | 9 |
|  | B. A Preliminary Injunction Is Inappropriate Because Of MMJK'S Unclean Hands | 11 |
|  | C. MMJK Will Not Be Irreparably Harmed If Its Motion For Preliminary Injunction Is Denied | 12 |
|  | D. The Balance Of Hardships And The Public Interest Weigh Against Granting The Preliminary Injunction | 13 |
| V. | IN THE UNLIKELY EVENT THAT A PRELIMINARY INJUNCTION IS ORDERED, MMJK MUST BE REQUIRED TO POST A BOND IN THE AMOUNT OF $15 MILLION | 13 |
| VI. | CONCLUSION | 15 |

i

ULTIMATE BLACKJACK TOUR, LLC'S OPPOSITION TO MMJK, INC.'S
MOTION FOR PRELIMINARY INJUNCTION - CASE NO. C 3:07-CV-03236-BZ

# TABLE OF AUTHORITIES

<u>Page No.</u>

**Federal Cases**

*Amazon.com, Inc. v. Barnesandnoble.com,*
   239 F.3d 1343, 1359 (Fed. Cir. 2001)..................................................................4

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,*
   489 U.S. 141, 156 (1989)..................................................................................8

*Chamberlain Group, Inc. v. Lear Corp.,*
   2007 U.S. Dist. LEXIS 23883 ........................................................................14

*F.A.C.E. Trading, Inc. v. Carter,*
   821 N.E. 2d 38 (Ind. App. 2005) ....................................................................11

*Ferring B.V. v. Barr Laboratories, Inc.,*
   437 F.3d 1181 (Fed. Cir. 2006).......................................................................10

*Genentech, Inc. v. Novo Nordisk, A/S,*
   108 F.3d 1361, 1364 (Fed. Cir. 1997)..........................................................1, 4

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.,*
   49 F.3d 1551 (Fed. Cir. 1995).........................................................................3

*Illinois Tool Works, Inc. v. Grip Pak, Inc.,*
   906 F.2d 679 (Fed. Cir. 1990).....................................................................4, 13

*Intel Corp. v. ULSI Sys. Tech., Inc.,*
   995 F.2d 1566, 1568 (Fed. Cir. 1993).............................................................3

*KSR International Co. v. Teleflex, Inc.,*
   127 S.Ct. 1727 (2007).....................................................................................8

*Lemelson v. United States,*
   752 F.2d 1538 (Fed. Cir. 1985).......................................................................5

*Lennon v. Screen Creations, Ltd.,*
   939 F. Supp. 287, 293 (S.D.N.Y. 1996)........................................................11

*Lindey v. Pa. State Police,*
   916 A.2d 703 (Pa.App. 2006) .......................................................................12

*Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.,*
   357 F.3d 1319, 1325 (Fed. Cir. 2004).............................................................4

*Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.,*
   16 F.3d 1032, 1035-1036 (1994) ..................................................................14

*Reebok Int'l Ltd. v. J. Baker, Inc.,*
   32 F.3d 1552, 1555 (Fed. Cir. 1994)...........................................................3, 4

*Sanofi-Synthelabo v. Apotex, Inc.,*
   470 F.3d 1368, 1385 (2006)..........................................................................14

*Shorts Bar of Rochester, Inc. v. N.Y. State Liquor Auth,*
   17 A.D. 3d 1101 (N.Y. App 2005) ...............................................................12

*Sniezek v. Colo. Dept. of Revenue,*
   113 P.2d 1280 (Colo. App. 2005) .................................................................11

*TCPIP Holding Co., Inc. v. Haar Comm 's, Inc.,*
   244 F.3d 88, 102-03 (2d Cir. 2001) ..............................................................11

ii

ULTIMATE BLACKJACK TOUR, LLC'S OPPOSITION TO MMJK, INC.'S
MOTION FOR PRELIMINARY INJUNCTION - CASE NO. C 3:07-CV-03236-BZ

**State Cases**

*ABBA Rubber Co. v. Seaquist,*
  235 Cal. App. 3d 1, 10 (1991) .................................................................... 12
*Fed. Auto. Serv. v. Lane Buick Co.,*
  204 Cal. App. 2d 689, 695 (1962) .............................................................. 13
*Miller v. Santa Margarita Land & Cattle Co.,*
  217 Cal. App. 2d 764, 766 (1963) .............................................................. 13
*Surety Sav. & Loan Assn. v. Nat'l Auto. & Cas. Ins. Co.,*
  8 Cal. App. 3d 752, 757 (1970) .................................................................. 13

**Other Authorities**

35 U.S.C. § 103 ............................................................................................. 8
37 CFR 1.97 .................................................................................................. 9
37 CFR 1.97(e) ............................................................................................. 9
37 CFR 1.98 .................................................................................................. 9
California Code of Civil Procedure § 529(a) ............................................. 14
Federal Rules of Civil Procedure Rule 65(c) ............................................. 14
MPEP § 609 .................................................................................................. 9
MPEP § 609.05(a) ........................................................................................ 9

iii

**ULTIMATE BLACKJACK TOUR, LLC'S OPPOSITION TO MMJK, INC.'S MOTION FOR PRELIMINARY INJUNCTION - CASE NO. C 3:07-CV-03236-BZ**

## I.

## PRELIMINARY STATEMENT

Plaintiff MMJK, Inc.'s ("MMJK") motion for a preliminary injunction is an attempt to disrupt the business of Defendant Ultimate Blackjack Tour, LLC ("UBT") on the eve of its upcoming fall television series beginning in September, 2007. The motion should be denied for numerous reasons. First, UBT does not infringe upon MMJK's patent. Second, MMJK's patent is invalid. Third, MMJK has been guilty of inequitable conduct and unclean hands. Fourth, MMJK has failed to demonstrate that it will be irreparably harmed or that damages at law would not be an adequate remedy.

Having failed at attracting players to its website, MMJK has brought this suit in the hopes that the delay, expense, and harassment it causes will harm UBT and allow MMJK either to improperly gain a beachhead in the market or to extort a settlement from UBT.

## II.

## SUMMARY OF ARGUMENT

To defeat MMJK's motion for a preliminary injunction, UBT needs only show that a "substantial question" exists as to the infringement or validity of the asserted claims of U.S. Patent No. 7,094,154 ("the '154 patent"), or that the other factors do not warrant the extraordinary remedy of a preliminary injunction. *See Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1364 (Fed. Cir. 1997). Here, there are substantial questions as to infringement, validity, and irreparable harm, and further, MMJK committed inequitable conduct.

UBT's websites www.playubt.com and www.clububt.com (collectively, "UBT websites"), do not infringe any of the claims of the '154 patent. The UBT websites do not satisfy, either literally or under the Doctrine of Equivalents, the claim limitation "disbursing the prize pool to the winning player and any eligible runner-up players in the form of prizes that have immediate value, subsequent to the completion of the tournament" which is required by all the claims of the '154 patent. Moreover, all of the claims of the '154 patent are invalid in view of examples of prior art, all of which anticipate the claims of the '154 patent. Additionally, prior art references, and common knowledge known to one of ordinary skill in the art, render all the claims of the '154 patent obvious.

1

Furthermore, the '154 patent is unenforceable because during prosecution of the application that resulted in the '154 patent, Applicants, having been informed in writing by the U.S. Patent and Trademark Examiner that the Information Disclosure Statement they submitted was defective and needed to be corrected, ignored this directive and did nothing to correct their errors. Instead, Applicants paid the issue fee in the allowed application without even attempting to correct the errors. Such errors prevented the Examiner from being able to consider the material prior art Applicants submitted. By purposefully ignoring the Examiner's explicit request and thereby preventing the Examiner from considering Applicants' own material prior art, Applicants perpetrated a fraud on the U.S. Patent and Trademark Office. Accordingly, the '154 patent is unenforceable.

The motion should also be denied because MMJK is guilty of unclean hands. MMJK's competing website (www.betzip.com) is likely an illegal gambling site because the "consideration" paid by its customers is in exchange for the opportunity to play a game of chance and possibly to win prizes. Unlike UBT, MMJK does not have a "primary business" separate and distinct from this gambling website.

Finally, Plaintiff MMJK has failed to show either irreparable injury or that damages at law would be inadequate.

### III.

### STATEMENT OF FACTS

The '154 patent is entitled "Computer Networked Game System Utilizing Subscription Based Membership and Alternative Methods of Entry." The "Summary of the Invention" section of the '154 patent states, in relevant part:

> A computer networked, multi-user game system utilizing subscription based membership and alternative methods of entry, as well as the award of prizes of immediate value to the winner is described....A subscription-based membership is established for each player by charging each player a fee for a pre-determined membership time period....An alternative method of entry is provided to allow non-subscription players to participate in the online game or tournament without payment of the subscription fee. Non-

2

ULTIMATE BLACKJACK TOUR, LLC'S OPPOSITION TO MMJK, INC.'S
MOTION FOR PRELIMINARY INJUNCTION - CASE NO. C 3:07-CV-03236-BZ

subscribing players are only allowed a single entry per game or tournament....After completion of the game or tournament, the prize pool is disbursed to the winning player and any eligible runner-up players in the form of cash, cash-equivalent notes, or prizes that have inherent and immediate value. (Exh. B to Rosenthal Decl.)

The UBT websites allow members of the general public to play blackjack and poker online. However, this is where any similarity to MMJK's business ends. UBT's business is described in the Declaration of Sanford I. Millar, its Chief Operating Officer, Chief Financial Officer, and General Counsel. As can be seen from Mr. Millar's declaration, online games are not UBT's primary business. Rather, UBT offers its customers a full panoply of goods and services distinct from playing online. UBT's business model emphasizes a "Club" membership and its television series, "Elimination Blackjack," which began airing on CBS Network and WGN cable station in the Fall of 2006 and will continue to air this Fall and next Fall. (Millar Decl., ¶7.)

Gambling laws in the United States typically require that online games of chance require both an Alternative Means of Entry ("AMOE") into the game other than by paying, and also a product or service that is the primary business purpose of the company. UBT manifestly complies with these requirements because its online games not only provide an AMOE, but also are only a single aspect of its business model. UBT emphasizes generating revenue through its "Club" membership and its television show. (Millar Decl., ¶7.) On the other hand, MMJK's primary business is its online betting games. Therefore, MMJK is likely an illegal "sweepstakes" or "gambling site," notwithstanding its AMOE.

## IV.

## THE MOTION FOR PRELIMINARY INJUNCTION SHOULD BE DENIED BECAUSE MMJK HAS FAILED TO MEET ITS HEAVY BURDEN FOR THIS EXTRAORDINARY RELIEF

A preliminary injunction is a "drastic and extraordinary remedy," not to be routinely granted. *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551 (Fed. Cir. 1995); *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993). The burden is always on the movant to show entitlement to a preliminary injunction. *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1555 (Fed. Cir. 1994). Whether a preliminary injunction should issue requires a balancing of four

3

ULTIMATE BLACKJACK TOUR, LLC'S OPPOSITION TO MMJK, INC.'S
MOTION FOR PRELIMINARY INJUNCTION - CASE NO. C 3:07-CV-03236-BZ

factors: likelihood of success, irreparability of harm, balance of hardships, and an evaluation of any impact on the public interest. *E.g., Illinois Tool Works, Inc. v. Grip Pak, Inc.*, 906 F.2d 679 (Fed. Cir. 1990). Notwithstanding this balancing, a preliminary injunction should not be granted if the movant is unable to show a reasonable likelihood of success. *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1325 (Fed. Cir. 2004).

If an accused infringer "raises a 'substantial question' concerning validity, enforceability, or infringement (*i.e.*, asserts a defense that [the patentee] cannot show 'lacks substantial merit') the preliminary injunction should not issue." *Genentech*, 108 F.3d at 1364. To resist an injunction, "one need not make out a case of actual infringement or invalidity." *See, Reebok v. Int'l v. J. Baker, Inc.*, 32 F.3d 1552 (Fed. Cir. 1994). Vulnerability is the issue at the preliminary injunction stage. The showing of a substantial question as to infringement or invalidity thus requires less proof than necessary for trial. *Amazon.com, Inc. v. Barnesandnoble.com*, 239 F.3d 1343, 1359 (Fed. Cir. 2001).

### A.   MMJK WILL NOT SUCCEED ON THE MERITS.

There are substantial questions concerning infringement, validity, and enforceability that make it impossible to conclude that MMJK is likely to succeed on the merits. These conclusions are strongly supported by the Declaration of L. Kenneth Rosenthal.

The Declaration of Mr. Rosenthal sets forth in detail his expert opinion that UBT does not infringe the '154 patent and that the '154 patent is invalid and unenforceable. Mr. Rosenthal is eminently qualified to render this opinion given his educational background and professional experience. Mr. Rosenthal is a Phi Beta Kappa from MIT with an undergraduate degree in physics. He also has an MBA from USC. He is licensed to practice on patent matters before the U.S. Patent and Trademark office. For seven years, he served as the acting director of USC's Patent and Copyright Administration. In connection with this executive duty, he performed precisely the same kinds of analyses he performed in connection with his declaration. (Rosenthal Decl., ¶9.) Mr. Rosenthal has concluded that the UBT websites do not infringe on the '154 patent and that the '154 patent is invalid both because of lack of novelty based on the "prior art" and under the doctrine of "obviousness." (Rosenthal Decl.,.e.g. ¶¶15-16, 31, 32.) Mr. Rosenthal has also demonstrated that the Applicant of the

'154 patent perpetrated a fraud on the U.S. Patent and Trademark Office thereby rendering the patent unenforceable. (Rosenthal Decl., ¶¶17, 167, 168.)

### 1. UBT Does Not Infringe Any Claims Of The '154 Patent.

There are only two ways that a plaintiff may establish infringement of a patent. The first is by proving "literal infringement," and the second is by proving infringement based on the "Doctrine of Equivalents," an equitable doctrine. It is well-established that "each element of a claim is material and essential, and that in order for a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device." *Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed. Cir. 1985). In order to infringe under the doctrine of equivalents, the element must differ only insubstantially from the asserted claim limitation. *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1349 (Fed. Cir. 1998). The courts sometimes express the test as: whether the accused device performs substantially the same function in substantially the same way to obtain substantially the same result ("the function/way/result test"). *See Read Corp. v. Portec, Inc.*, 970 F.2d 816, 822 (Fed. Cir. 1992).

UBT's websites operate in the following manner: When a runner-up player is eliminated from a tournament, he receives prize points immediately. That is, **as soon as** a runner-up player is eliminated, UBT credits his account with his prize points, even though the tournament he was just eliminated from is ongoing. For example, as soon as the 17th place player of a tournament is determined, he receives prize points, while the 16 remaining players are still playing, and so on. Players redeem prize points to enter other games or tournaments.

Next, let us turn to the claims of the '154 patent. Independent claims 1 and 5 require that there is the step of:

> "disbursing the prize pool to the winning player and **any eligible runner-up players** in the form of prizes that have immediate value, **subsequent to completion of the tournament**."

As set out particularly in claims 1 and 5, the prizes in the '154 patent are disbursed to the winning player and any eligible runner-up players, subsequent to the completion of the tournament. (Rosenthal Decl., ¶19.) A close read of this claim shows that the winning player and **multiple runner-**

5

ULTIMATE BLACKJACK TOUR, LLC'S OPPOSITION TO MMJK, INC.'S
MOTION FOR PRELIMINARY INJUNCTION - CASE NO. C 3:07-CV-03236-BZ

**up players** ("any…runner-up players"), receive prizes after the tournament is over. (Indeed, it appears that this claim means that the winning player and *all* runner-up players receive their prizes after the tournament is over.) Regardless, **the claims of the '154 patent must exclude a situation in which winnings are disbursed to only one runner-up player, and not other runner-up players, subsequent to the completion of the tournament.**

A review of the screen shots attached to Mr. Rosenthal's declaration reveals that at the UBT websites, **only one runner-up player** (2nd place) receives his prize subsequent to the completion of the tournament. As Mr. Rosenthal states, "All other runner-up players, namely 3rd place to 22nd place and beyond, received their points **prior** to the completion of the tournament." (Rosenthal Decl., ¶23-24 and Exh. G to Rosenthal Decl.)

UBT's prize disbursement model is of foremost significance. As Mr. Rosenthal notes, UBT's disbursement of prizes during the ongoing tournament maximizes game play, because runner-up players need not wait until the end of the tournament in order to redeem their points and enter another game or tournament. That is, players' reentry into another game is without delay, resulting in "more players, more games, more prizes, and ultimately, more business for UBT." (*See* Rosenthal Decl., ¶25.) Indeed, UBT's websites capitalize on players' gaming momentum by giving them the means to play in another game immediately upon exiting a tournament.

Consider the alternative. Other websites, including that of MMJK, award runners-up with tokens or points for reentry into another tournament after the end of the tournament. This waiting period, which could be one or two hours, might serve as a "cooling-off period," where players would have the opportunity to lose interest in continuing play. Notably, nowhere in the '154 patent specifications does the purported invention even consider the disbursement of prizes prior to the completion of the tournament.

In sum, there is no infringement of the '154 patent claims because the independent claims 1 and 5 contain the limitation of prizes being disbursed to both the winning player and any eligible runner-up players subsequent to the completion of the tournament, and as explained above, UBT does *not* disburse prizes *to more than one* runner-up player subsequent to the completion of the tournament. UBT disburses prizes *to only one* runner-up player subsequent to the completion of the tournament.

Therefore, UBT does not literally infringe the '154 patent. Moreover, UBT does not infringe the '154 patent based on the Doctrine of Equivalents, as UBT's prize disbursement structure does not "perform substantially the same function in substantially the same way to obtain substantially the same result" as the '154 patent. Indeed, as detailed above, disbursing prizes prior to the completion of the tournament is a different "way," that performs a different function, and achieves different results (facilitates and maximizes game play), than the '154 patent.

### 2. The '154 Patent Is Invalid.

#### a. *The Prior Art Anticipates The Claims Of The '154 Patent And Therefore The '154 Patent Lacks Novelty.*

Mr. Rosenthal analyzed the claims of the '154 patent in light of the prior art described and attached as Exhibits C, D, E, and F of his declaration. Although far from the only example, the preexisting Bugsys Poker Website ("the Bugsysclub site") is the most illustrative. (Exh. C to Rosenthal Decl.) The Bugsysclub site features games, including poker, for both subscription and non-subscription players. Like the '154 patent, a card game, prizes, fees, and chips are featured. The Bugsysclub site discloses limiting a non-subscription member to one entry per tournament. The Court is referred to Exhibit H of Mr. Rosenthal's declaration for a comparison of the '154 patent to the Bugsysclub site.

Mr. Rosenthal goes on to describe other prior art with the same characteristics. (Rosenthal Decl., ¶41.) For example, the '126 patent publication describes a computer-networked gaming system for online gaming over the Internet, where there are subscribing members and nonsubscribing members participating. It is clear that the technology could be applied to games having the characteristics of cards, poker, fees, tokens and prizes. Mr. Rosenthal concludes that the feature of the '126 patent publication "includes all the features of the claims of the '154 patent," and therefore that the '154 patent lacks requisite novelty to be a valid patent. (Rosenthal Decl., ¶¶45-46.)

#### b. *Even If Not Anticipated, The '154 Patent Is Invalid As Obvious Over The Prior Art.*

Even if this court were to conclude that the references described above do not anticipate the claims of the '154 patent, there is convincing evidence demonstrating that, either alone or in combination with other prior art referenced in Mr. Rosenthal's Declaration, these and other prior art

7

references would have rendered the claims of the '154 patent obvious to a person of ordinary skill in the art at the time MMJK made its alleged invention. *See* 35 U.S.C. § 103. Prior art references need not expressly teach each element of the claim to invalidate the claim as obvious. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 156 (1989) ("Both the novelty and nonobviousness requirements of federal patent law are grounded in the notion that concepts within the public grasp, or those so obvious that they readily could be, are the tools of creation available to all."). Thus, the very recent United States Supreme Court case, *KSR Int'l Co. v. Teleflex, Inc.*, 127 S.Ct. 1727 (2007) holds that the test of obviousness must *not* be based on a scrutiny of the "teaching, suggestion or motivation or TSM" test under which a patent claim is only proved obvious if the prior art, the problem's nature, or the knowledge of a person having ordinary skill in the art reveals some motivation or suggestion to combine the prior art teachings. In reversing the federal circuit which had applied this rigid test, the Supreme Court held that the federal circuit had addressed the question of obviousness in too rigid a fashion which was inconsistent with the requirement of nonobviousness codified in 35 U.S.C. § 103. The Court therefore articulated the test for obviousness as follows:

> When a work is available in one field of endeavor, design, incentives and other market forces can prompt variations of it either in the same field or in a different one. If a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability.

127 S.Ct. at 1740.

The prior art discussed in Mr. Rosenthal's declaration each independently shows that the '154 patent is invalid. However, it is also undeniable that each discloses providing a computer-implemented method allowing players to play a game over a computer network where the method provides subscription-based and non-subscription membership for players of the game where the non-subscription player is limited to only one entry per tournament and prizes from the prize pool are disbursed to the winning player and any eligible runner-up players after the tournament has been completed. The '154 patent has all these elements. (Exhs. H, I, and J to Rosenthal Decl.)

Mr. Rosenthal thoroughly discusses the "obviousness" of the '154 patent. Mr. Rosenthal concludes that the '154 patent should have been found by the Examiner to be obvious under either the

8

repudiated "motivation to combine" test or the *KSR* test. (Rosenthal Decl., ¶¶154-155.) Mr. Rosenthal concludes that the disclosures in the prior art are so common that any person skilled in the art would have found that the elements in the '154 claim are unpatentable as being obvious. (Rosenthal Decl., ¶156.) In fact, Mr. Rosenthal concluded that the '154 patent is merely a standard game recipe. (Rosenthal Decl., ¶158.) Thus, whatever minor differences MMJK may seek to identify between the prior art and its claimed invention, the claims of the '154 patent would have been obvious to one of ordinary skill in the computer gaming arts.

### 3. The '154 Patent Is Unenforceable Based On Inequitable Conduct.

During prosecution of the application that resulted in the '154 patent, Applicants submitted a defective Information Disclosure Statement to the U.S. Patent and Trademark Office. (Rosenthal Decl., ¶162.) In response, with its Notice of Allowance, the Examiner from the U.S. Patent and Trademark Office indicated:

> The information disclosure statement filed 12/30/04 fails to comply with the provisions of 37 CFR 1.97, 1.98 and MPEP § 609 because the information provided for reference [sic] A6 and A15 do not correspond or are conflicting in that the document numbers as provided does not match to date, name, and filing date information reported thereon and with respect to reference CA fails to comply with 1.98 at least due to lacking required relevant information for each publication listed in an information disclosure statement must be identified by publisher, author (if any), title, relevant pages of the publication, date, and page of publication. It has been placed in the application file, **but the information referred to therein has not been considered as to the merits**. Applicant is advised that the date of any re-submission of any item of information contained in this information disclosure statement or the submission of any missing elements(s) will be the date of submission for purposes of determining

9

ULTIMATE BLACKJACK TOUR, LLC'S OPPOSITION TO MMJK, INC.'S
MOTION FOR PRELIMINARY INJUNCTION - CASE NO. C 3:07-CV-03236-BZ

compliance with the requirements based on the time of filing the statement, including all certification requirements for statements under 37 CFR 1.97(e). *See* MPEP § 609.05(a)

(Exh. L to Rosenthal Decl.)

Accordingly, Applicants were made aware that the information disclosure statement was defective and that due to those defects, two of the material prior art references submitted for consideration by the Applicants to the U.S. Patent and Trademark Office were never considered by the Examiner. (Rosenthal Decl., ¶¶166-167; Exh. L to Rosenthal Decl.) Applicants were also aware that the Examiner requested correction of the defective information disclosure statement so the Examiner could properly consider the omitted prior art references. (*Id.*)

Despite being aware of the defect and the Examiner's explicit request to correct the defects in the information disclosure statement, Applicants did nothing to correct the improper submission. (Rosenthal Decl., ¶167.) Applicants also did nothing to provide the relevant information to the Examiner so that he or she could consider the material references to which Applicants alluded. (*Id.*) As a result of Applicants' error and refusal to provide the requested information, at least two of the material references Applicants submitted to the U.S. Patent and Trademark Office for consideration by the Examiner were never considered by the Examiner. In doing so, Applicants committed inequitable conduct, which renders the '154 patent unenforceable. (Rosenthal Decl., ¶¶167-168.)

In *Ferring B.V. v. Barr Laboratories, Inc.*, 437 F.3d 1181 (Fed. Cir. 2006), the court affirmed a finding of inequitable conduct and summarized the intent to deceive standard for inequitable conduct on summary judgment as requiring that (1) the Applicant knew of the undisclosed information; (2) the Applicant knew or should have known of the materiality of the information; and (3) the Applicant has not provided a credible explanation for the nondisclosure. The facts above clearly demonstrate that the Applicants for the '154 patent satisfied all three of the enumerated requirements proving intent. By purposefully preventing the Examiner from considering material prior art submitted by the Applicants, Applicants perpetrated a fraud on the U.S. Patent and Trademark Office with the intent to deceive. Accordingly, the '154 patent is unenforceable and, if for no other reason, MMJK's request for preliminary injunction should be denied.

B.   **A PRELIMINARY INJUNCTION IS INAPPROPRIATE BECAUSE OF MMJK'S UNCLEAN HANDS.**

A preliminary injunction is an equitable remedy, and thus is subject to the maxim that he who comes into equity must come with clean hands. *See TCPIP Holding Co., Inc. v. Haar Comm's, Inc.*, 244 F.3d 88, 102-03 (2d Cir. 2001) (preliminary injunction may be denied when party has unclean hands); *Estate of Lennon v. Screen Creations, Ltd.*, 939 F. Supp. 287, 293 (S.D.N.Y. 1996) (denying preliminary injunction in spite of "compelling arguments that [plaintiffs] have a likelihood of success on the merits and will be irreparably harmed without preliminary relief" because of plaintiffs' unclean hands).

It is apparent that MMJK is operating an illegal gambling site. MMJK's website, betzip.com, charges money to play in a game of chance for the opportunity to win a prize. Although it provides an AMOE, the gambling game is clearly the primary business purpose of the website. On the other hand, online gaming is only one aspect of UBT's business model. UBT charges a subscription price of $19.95 for "Club" membership. Therefore, in addition to buying the opportunity to play in online tournaments, UBT's customers subscribe to its one of a kind magazine, obtain expert playing advice, receive promotions, receive a newsletter and learn about tournament results. UBT's business model emphasizes generating revenue through this "Club" membership and through its television show, which in turn increases its "Club" subscriber base. This business model is in sharp contrast to MMJK's website which charges for tournament access only. (Millar Decl., ¶8.)

High judicial scrutiny is required in situations where the business promoters attempt to make money not from the sale of a product unrelated to the game but from paying customers desiring to win the game. This distinction was clearly articulated in *F.A.C.E. Trading, Inc. v. Carter*, 821 N.E. 2d 38 (Ind. App. 2005). There the Court of Appeals of Indiana affirmed summary judgment in favor of the state's Attorney General finding that a sweepstakes was illegal because it was not sufficiently related to attracting sales and promoting a distinct business of the defendant. Rather, the Court found that defendant's primary business was the revenue it derived from its sweepstakes. (*Id.* at 43.)

Similarly, in *Sniezek v. Colo. Dept. of Revenue*, 113 P.2d 1280 (Colo. App. 2005), the Colorado Court of Appeals affirmed a declaratory judgment in favor of the Colorado Department of Revenue and

11

ULTIMATE BLACKJACK TOUR, LLC'S OPPOSITION TO MMJK, INC.'S
MOTION FOR PRELIMINARY INJUNCTION - CASE NO. C 3:07-CV-03236-BZ

the Colorado Liquor and Enforcement Division, in which the Court determined that plaintiff's machines and devices constituted illegal gambling notwithstanding that the coupon purchased could be used to buy a product as well as for an opportunity to win money by chance. The Court concluded that the enterprise was illegal because the primary purpose of the plaintiff's machines was to enable customers to attempt to win cash. (*Id.* at 1282.)

Other courts have also disapproved of schemes which are merely a subterfuge for gambling. *See Shorts Bar of Rochester, Inc. v. N.Y. State Liquor Auth*, 17 A.D. 3d 1101 (N.Y. App 2005); *Lindey v. Pa. State Police*, 916 A.2d 703 (Pa.App. 2006).

Here, UBT clearly falls on the legal side of this distinction and MMJK clearly falls on the illegal side of the distinction. MMJK offers nothing of value other than the chance to win prizes by playing online. (*See* ¶6 of Declaration of Jason Kellerman.) Notwithstanding, MMJK now has the temerity to enter this Court of equity and seek its extraordinary intervention to enjoin UBT's legal business so that its likely illegal business can have an opportunity to flourish.

### C. MMJK WILL NOT BE IRREPARABLY HARMED IF ITS MOTION FOR PRELIMINARY INJUNCTION IS DENIED.

As discussed above, MMJK has not made any convincing showing of a likelihood of success on the merits and therefore it is not entitled to a presumption of irreparable harm. MMJK also argues that it will be irreparably harmed because "[P]laintiff may never be able to capture the market share Defendant has unlawfully obtained through its infringement." (Plaintiff MMJK, Inc.'s Motion, p. 7.) Other than these naked assertions, MMJK provides nothing to support its argument that it will be unable to capture market share or will be irreparably harmed in any way.

As Mr. Millar's Declaration and MMJK's own papers demonstrate, the continuation of UBT's business will not cause MMJK irreparable harm. (Millar Decl., ¶¶5-8.) MMJK has made no showing that it would be able to capture market share as a result of an injunction against UBT. (Millar Decl., ¶5.) MMJK has provided no financial or business data whatsoever leading to the conclusion that but for UBT's allegedly infringing activities, MMJK would be successful. There is not a scintilla of evidence leading to the conclusion that UBT's allegedly infringing activities have harmed MMJK in any way that is not compensable in money damages. (Millar Decl., ¶6.)

On the other hand, Mr. Millar states in his declaration that based on industry standards, MMJK's damages, if infringement were proved, would be calculable. Mr. Millar states "[w]hether it is our Company, Plaintiff on any other similar company, the actual loss of net revenue can be calculated using generally accepted accounting principles." (*Id.*)

### D.  THE BALANCE OF HARDSHIPS AND THE PUBLIC INTEREST WEIGH AGAINST GRANTING THE PRELIMINARY INJUNCTION.

The hardships UBT would encounter if its website were enjoined pursuant to MMJK's proposed order vastly outweigh any hardships MMJK would suffer. *See Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683-684 (Fed. Cir. 1990) (preliminary injunction denial affirmed on appeal under circumstances where hardship on defendant if injunction were granted greatly outweighed hardship on plaintiff if injunction were denied).

UBT is now operating a firmly established and thriving business. MMJK is seeking to enjoin the operation of UBT's existing websites. This injunction would materially affect UBT's business because its websites are an integral part of its "Club." A subscription price is charged for "Club" membership. Club membership in turn leads to a following of fans and participants for the Elimination Blackjack™ Tournament which is the feature of UBT's television show. If UBT's websites were to be disrupted, UBT's entire integrated and multidimensional business model could be destroyed or severely harmed. (Millar Decl., ¶¶8-9.) Clearly, this very real hardship far outweighs MMJK's speculation about what it might have been able to do or might possibly be able to do but for UBT's alleged infringement.

The public interest certainly would not be promoted by granting an injunction. No public interest would be served by enabling MMJK's likely illegal gambling site or by elevating a patent that was obtained after skirting the requirements of the U.S. Patent and Trademark Office.

### V.
### IN THE UNLIKELY EVENT THAT A PRELIMINARY INJUNCTION IS ORDERED, MMJK MUST BE REQUIRED TO POST A BOND IN THE AMOUNT OF $15 MILLION

For all the reasons set forth above, this Court should deny MMJK's Motion For Preliminary Injunction. However, if this Court is inclined to grant the injunction, California Code of Civil Procedure

13

ULTIMATE BLACKJACK TOUR, LLC'S OPPOSITION TO MMJK, INC.'S
MOTION FOR PRELIMINARY INJUNCTION - CASE NO. C 3:07-CV-03236-BZ

§ 529(a) and Federal Rules of Civil Procedure Rule 65(c) both mandate that MMJK post a bond as a condition for the injunction. Cal. Civ. Proc. Code § 529(a); FRCP Rule 65(c); *see also ABBA Rubber Co. v. Seaquist*, 235 Cal. App. 3d 1, 10 (1991) (a bond is an "indispensable prerequisite to the issuance of a preliminary injunction" and the duty to order a bond is "mandatory, not discretionary."); *Miller v. Santa Margarita Land & Cattle Co.*, 217 Cal. App. 2d 764, 766 (1963) (preliminary injunction reversed because no bond ordered); *Fed. Auto. Serv. v. Lane Buick Co.*, 204 Cal. App. 2d 689, 695 (1962) (injunction held inoperative and of no effect because the order did not require a bond). "It is well settled the damage recoverable under an injunction bond . . . is for all loss proximately resulting from the injunction." *Surety Sav. & Loan Assn. v. Nat'l Auto. & Cas. Ins. Co.*, 8 Cal. App. 3d 752, 757 (1970).

Should UBT be enjoined from hosting online game tournaments, Plaintiff's bond should compensate UBT for all its losses due to the injunction. *See Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1035-1036 (1994) (plaintiff's $15 million bond covered defendant's lost profits due to injunction, costs incurred when defendant ceased production and distribution of its product and thereafter recommenced those activities upon dissolution of the injunction, and interest defendant would have earned on its lost profits); *see also Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1385 (2006) (plaintiff's $400 million bond covered defendant's potential lost profits, lost market share, and associated costs of relaunch of product); *see also Chamberlain Group, Inc. v. Lear Corp.*, 2007 U.S. Dist. LEXIS 23883 (plaintiff's $10 million bond covered defendant's lost profits, lost market share, and related costs).

Here, a preliminary injunction would, at a minimum, cause UBT to incur $15 million in damage. If the proposed injunction is ordered, UBT will have to spend substantial sums on modification of its websites resulting in a critical delay in marketing and promotion right on the eve of its September, 2007 telecasts. The value of the next television broadcast as a promotional device for the "Club" will be lost and therefore $6 million in television costs will have been for naught. UBT's combined losses as a result of an injunction would be in excess of $15 million. In addition to the $6 million losses on the television show, UBT will lose television advertising revenue and suffer overhead marketing and redesigning costs of $9 million. Any injunctive relief must therefore be accompanied by a bond in the amount of $15 million. (Millar Decl., ¶9.)

14

ULTIMATE BLACKJACK TOUR, LLC'S OPPOSITION TO MMJK, INC.'S
MOTION FOR PRELIMINARY INJUNCTION - CASE NO. C 3:07-CV-03236-BZ

## VI.

## CONCLUSION

MMJK is desperately seeking to harm UBT for ulterior motives having nothing to do with any genuine grounds for extraordinary preliminary injunctive relief. UBT is not infringing upon MMJK's '154 patent which is invalid in any event. An injunction would cause very substantial harm to UBT's business. MMJK was guilty of inequitable conduct in obtaining its patent and is likely operating an illegal gambling site. MMJK's damages in the unlikely event it proves its case at trial are calculable at law.

Surely, there is no basis for granting MMJK's motion.

DATED: July 25, 2007                    GREENBERG TAURIG, LLP


                                        By:____/S/_____
                                        MATTHEW S. STEINBERG
                                        Attorneys for Defendant
                                        Ultimate Blackjack Tour, LLC

# CERTIFICATE OF SERVICE

I, hereby certify that on July 25, 2007, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to the e-mail addresses denoted below:

DERGOSITS & NOAH LLP
Todd A. Noah (SBN 152328) (tnoah@dergnoah.com)
Paul K. Tomita (SBN 188096) (ptomita@dergnoah.com)
Four Embarcadero Center, Suite 1450
San Francisco, California 94111
Telephone: (415) 705-6377
Facsimile: (415) 705-6383

DATED: July 25, 2007                    GREENBERG TRAURIG, LLP


                                        By:_____/S/_____
                                        MATTHEW S. STEINBERG
                                        Attorneys for Defendant
                                        Ultimate Blackjack Tour, LLC