GREENBERG TAURIG, LLP
MATTHEW S. STEINBERG (SBN 82969)
STEVE P. HASSID (SBN 219913)
2450 Colorado Avenue, Suite 400 East
Santa Monica, California 90404
Telephone: (310) 586-7700
Facsimile: (310) 586-7800
Email: steinbergm@gtlaw.com; hassids@gtlaw.com

Attorneys for Defendant
Ultimate Blackjack Tour, LLC

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MMJK, Inc.,<br><br>  Plaintiff,<br><br>vs.<br><br>ULTIMATE BLACKJACK TOUR, LLC<br><br>  Defendant. | CASE NO. C 3:07-CV-03236-BZ<br><br>**DEFENDANT ULTIMATE BLACKJACK TOUR, LLC'S SURREPLY**<br><br>[Filed Concurrently with Declaration of L. Kenneth Rosenthal and Affidavit of Paul Forrest Hickman]<br><br>DATE: August 15, 2007<br>TIME: 10:00 a.m.<br>LOCATION: Courtroom G<br>JUDGE: Hon. Bernard Zimmerman |

# I. SUMMARY OF ARGUMENT

Defendant Ultimate Blackjack Tour, LLC ("UBT") has established numerous substantial questions of non-infringement, invalidity, and unenforceability of U.S. Patent No. 7,094,154 ("the '154 patent"), requiring denial of Plaintiff MMJK, Inc.'s ("MMJK") motion for preliminary injunction. In response to the substantial questions raised by UBT's opposition, MMJK replies with flawed and unsubstantiated arguments that obfuscate and mislead. For example, in an effort to try to avoid UBT's non-infringement arguments, MMJK proposes flawed constructions for the claim terms "prize pool," "any eligible runner-up players," and "immediate value," which are contrary both to the ordinary meaning of those terms and to the intrinsic record. Based on these flawed constructions, MMJK takes illogical positions regarding when a tournament infringes the '154 patent, all of which are contrary to and unsupported by the teachings found in the '154 patent. As shown below, when the claims of the '154 patent are properly construed, UBT's websites cannot infringe any of its claims.

MMJK then erroneously argues that various pieces of invalidating prior art identified by UBT do not teach certain limitations of the '154 patent. In fact, each of the references explicitly teaches the limitations MMJK argues are not taught. Having shown that all the limitations MMJK alleges are not taught are in fact explicitly taught by at least three prior art references, UBT proves that the '154 patent is invalid. Furthermore, to clearly show that the prior art teaches each and every limitation of the '154 claims, UBT now provides additional claim charts showing that 4 pieces of prior art teach each and every limitation of the independent claims of the '154 patent.

Additionally, MMJK's arguments regarding obviousness have no merit, especially in light of the new obviousness test enunciated in *KSR Int'l Co. v. Teleflex, Inc.*, 127 S.Ct. 1727 (2007). UBT will show that even if the Court finds that the prior art does not teach every aspect of each and every limitation of the '154 patent claims exactly, any missing aspect is taught by other pieces of the prior art and/or is common knowledge. Accordingly, the claims of the '154 patent would be obvious to one of ordinary skill in the art. Lastly, MMJK's response to UBT's inequitable conduct allegation was noticeably silent regarding why MMJK's intentional actions, which prevented the Patent Office from considering U.S. Patent Publication No. 2004/0248634 to Herrmann et al. (the "Herrmann publication") on its merits, do not constitute inequitable conduct. Therefore, despite MMJK's meritless and misleading arguments, UBT has

established numerous substantial questions of non-infringement and invalidity of the '154 patent. Therefore, MMJK's preliminary injunction motion must be denied.

## II. MMJK'S INFRINGEMENT POSITION IS FLAWED

### A. MMJK'S PROPOSED CONSTRUCTION OF "PRIZE POOL" IS FLAWED

MMJK argues that "[a]s properly construed ... 'prizes that have immediate value' means **cash or merchandise**. Thus, as properly construed, the 'disbursing **the prize pool**...' limitation ...**means paying out cash or merchandise** to the winner and any runner-up player, if any qualify" Using this flawed construction, MMJK concludes that "...it becomes clear that **every tournament that pays out cash or merchandise to at least the winner supports a finding of infringement**." MMJK's Reply Brief at 3, emphasis added.

UBT's prize pools always include multiple prizes that are tournament points and/or play chips. Tournament points and play chips are used for entry into other UBT tournaments. In an effort to try to force UBT to infringe, MMJK attempts to rewrite the meaning of "prize pool" to mean only "cash or merchandise." MMJK's proposed construction is contrary to the ordinary meaning of "prize pool" and the intrinsic record. The ordinary meaning of "prize pool" in the context of the '154 patent is **every prize** awarded in a tournament. (See *e.g.*, Exhs. Q and R[1], which define "pool" as "the **total amount** of players' stakes in gambling or sweepstakes"[2] and "fund containing **all** the money bet in a game of chance or on the outcome of an event, respectively."[3] Absent a "clear indication" from the patent specification or a "clear disavowal" in the prosecution history; there is a "heavy presumption" that a claim term must be given its plain and ordinary meaning. *See Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002).

The specification of the '154 patent defines "prize pool" in the same way- every prize awarded in a tournament. (See *e.g.*, Exh. B, Fig. 3, which shows "an illustrative prize pool for a hypothetical monthly tournament" where the prize pool includes every prize awarded as part of the tournament.) Accordingly, the proper construction for "prize pool" is **every prize** awarded in a tournament, and should not be limited

---

[1] References to Exhibits A through O are to Exhibits attached to the Declaration of L. Kenneth Rosenthal, filed on July 25, 2007, concurrently with UBT's Opposition. References to Exhibits P through [fill in] are to Exhibits attached to the Declaration of L. Kenneth Rosenthal, filed concurrently with this surreply.
[2] Compact Oxford English Dictionary; http://www.askoxford.com/concise_oed/pool_2?view=uk
[3] The American Heritage Dictionary of The English Language; http://www.bartleby.com/61/16/P0441600.html

to only prizes of cash and merchandise.

By limiting "prize pool" to "cash and merchandise," MMJK tries to import the "immediate value" limitation into the meaning of "prize pool." This would render the "immediate value" portion of the limitation meaningless and redundant, which is improper. *See Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1563 (Fed. Cir. 1991) ("When the language of a claim is clear, as here, and a different interpretation would render meaningless express claim limitations, we do not resort to speculative interpretation…").

### B.  MMJK'S PROPOSED CONSTRUCTION OF "ANY RUNNER-UP PLAYERS" IS FLAWED

MMJK further argues "according to Webster's…. 'any' means '**one** or more- used to indicate an undetermined number or amount'…As used in [the] claims… 'any eligible runner-up players' means any qualified runner-up player….Thus, as properly construed, the 'disbursing the prize pool…' limitation…means paying out cash or merchandise to the winner and <u>**any runner-up player**</u>, if any qualify, after the tournament is over." MMJK's Reply Brief at 3, emphasis added.

MMJK's proposed construction attempts to rewrite the "**any** eligible runner-up **players**" (plural) limitation of the '154 patent to mean "**any one** eligible runner-up **player**" (singular). MMJK's attempt to rewrite the claims to make "players" singular, is flawed. MMJK's proposed construction ignores the ordinary meaning of the "any runner-up **players**" claim limitation. Contrary to the '154 patent, MMJK's new construction means that if there is **only one eligible** runner-up player (out of many eligible runner-up players) who receives a prize of immediate value after the tournament is completed, there is infringement. That is, under MMJK's proposed construction, infringement would result even if there are numerous other eligible runner-up players who receive prizes that do **not** have "immediate value" and/or the prize pool prizes are disbursed to eligible runner-up players **prior** to completion of the tournament. Such a construction is contrary to ordinary meaning of the claim terms and the specification of the '154 patent, which never discloses such a scenario. Instead the '154 patent defines "any eligible runner-up players" as all of the players of a tournament who receive prizes, excluding the ultimate winner. *See* Exh. B, col. 2. lines 25-29 and Fig. 3. Figure 3 of the '154 patent is an illustrative prize pool which shows that the runner-up players are all the players, excluding the winner.

Properly construed, "any eligible runner-up **players**" is all of the players of a tournament who receive prizes, excluding the ultimate winner. Indeed, according to the Encarta® World English

3

Dictionary, North American Edition, "any" can mean "every: every person or thing of a particular category or description, no matter who or what."[4] Additionally, the scenario MMJK raises "where there are no runner-up players that are qualified to receive a prize and only the winner receives a prize," is irrelevant because that scenario does not occur in any of the tournaments played on the UBT websites.

### C. THE PRIZES DISBURSED BY UBT'S WEBSITES DO NOT HAVE "IMMEDIATE VALUE"

All of the claims of the '154 patent require that the prizes of the prize pool "have immediate value." As discussed above, "the prize pool" is every prize provided as part of the tournament- not just some of the prizes in the prize pool. MMJK further argues that "as properly construed, 'disbursing **the prize pool**...' limitation ...means **paying out cash or merchandise to the winner and any runner-up player...**" MMJK's Reply Brief at 3, emphasis added.

UBT's prize pool always includes multiple prizes that are tournament points and/or play chips. MMJK notes, "'**prizes that have immediate value' means cash or merchandise**." Tournament points and play chips are not cash or merchandise. Therefore, because UBT's prize pools always include multiple prizes that are tournament points and/or play chips, which MMJK admits are not "prizes that have immediate value," UBT's websites do not satisfy this limitation of the '154 patent claims.

Moreover, as Mr. Rosenthal further explains in his Declaration submitted hereto, even UBT's cash and merchandise prizes do not have "immediate value," because before any prize is awarded or disbursed through the UBT websites, the winning player must first claim the prize and then verify his eligibility. (Exh. A to UBT's Answer.) Only after claiming his prize and verifying eligibility can a player receive his prize within 30 days of claiming it. Thus, even if cash and/or merchandise are disbursed by the UBT websites, they **may never have any value,** if they are not claimed or the winner is not eligible to receive the prize. For this separate reason, UBT's websites do not satisfy the "prizes that have immediate value" limitation of the '154 patent claims.

### D. "SUBSEQUENT TO COMPLETION OF THE TOURNAMENT" IS NOT SATISFIED

MMJK argues that "[b]ecause the winner receives cash after the tournament is over, the tournament illustrated in...[the] exhibit to Mr. Rosenthal's declaration **infringes the claims of the '154 patent**... and "[o]nce the Court understands that in the tournaments at issue in this case, the winners, and

---

[4] http://encarta.msn.com/encnet/features/dictionary/DictionaryResults.aspx?refid=1861586118

1  in many cases a runner-up player or players, receive cash or merchandise prizes in addition to tournament
2  points, then it becomes clear that **every tournament that pays out cash or merchandise to at least the**
3  **winner supports a finding of infringement.**" MMJK Reply at 4-5.
4      Once again, MMJK proposes a construction that ignores the ordinary meaning of "disbursing the
5  prize pool...subsequent to completion of the tournament." As discussed above, the "prize pool" is every
6  prize awarded as part of the tournament. The UBT prize pool always includes multiple prizes that are
7  tournament points and/or play chips.
8      In order to understand why the UBT websites do not satisfy this limitation, one must understand
9  how the games on the UBT websites function. When a runner-up player is eliminated from a tournament
10 and his prize is tournament points or play chips, he immediately receives the tournament points or play
11 chips. That is, as soon as a runner-up player is eliminated, UBT credits his account with tournament points
12 or play chips, even though the tournament is still ongoing. Tournament points and play chips are only
13 used to enter into other UBT tournaments. For example, as soon as the 5th place player places in the
14 tournament, UBT immediately credits his account with the tournament points or play chips he has won,
15 even though four players are still playing in the ongoing tournament. As such, only one eligible runner-up
16 player (2nd place) receives his tournament points prize subsequent to the completion of the tournament--
17 tournament points are disbursed to all other eligible runner-up players prior to completion of the
18 tournament. Therefore, because UBT's prize pools always include multiple prizes that are tournament
19 points and/or play chips that are disbursed **prior** to completion of the tournament, UBT's websites do not
20 satisfy the "subsequent to completion of the tournament limitation" of the '154 patent claims.
21     Despite MMJK's arguments, it is of no consequence whether the winner receives cash after the
22 tournament is over or whether the winner and multiple runner-up players receive cash prizes after the
23 tournament is over. Prize pools in the UBT websites always include tournament points and/or play chips,
24 and the prizes of the prize pools are not disbursed subsequent to completion of the tournament, as
25 required. Accordingly, the UBT websites do not infringe the '154 patent.
26     In sum, the UBT websites cannot infringe any claims of the '154 patent claims because all the
27 claims require that all the tournament prizes have immediate value and be disbursed to the winning player
28 and eligible runner-up players after the tournament is completed. As explained above, UBT's prize pool

always includes multiple prizes that are tournament points and/or play chips, which do not have immediate value. Additionally, neither cash nor merchandise has immediate value, as neither may be awarded unless or until winners claim their prizes and verify their eligibility. Finally, the tournament points and/or play chips for all winners, excluding first and second place winners, are disbursed prior to completion of the tournament. For each of these reasons, the UBT websites cannot infringe any claims of the '154 patent.

### III. THE '154 PATENT IS INVALID

#### A. THE PRIOR ART TEACHES ALL THE LIMITATIONS OF THE '154 PATENT

MMJK complains that "it is critical to note at the outset that Defendant has misled this Court by treating the BugsysClub, PokerSchoolOnline and PokerPages Web sites as a single reference." MMJK is completely mistaken. UBT's invalidity position never relied on the three websites as one reference. Instead, UBT relies on the prior art **publication** entitled "Frequently Asked Questions for BugsysClub, PokerSchoolOnline and PokerPages" ("Exhibit B"), which discusses those websites, to show that the '154 patent is invalid. The FAQ reference is a **single source prior art publication**. UBT's reliance on this reference to show invalidity of the '154 patent is perfectly permissible and appropriate, as every element of '154 patent claims are taught within the "four corners" of this publication. *See Advanced Display Systems Inc. v. Kent State University*, 212 F.3d 1272, 1282, 54 USPQ2d 1673, 1679 (Fed. Cir. 2000), cert. denied, 532 U.S. 904 (2001) ("invalidity by anticipation requires that the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently..."). Accordingly, in an effort to try to avoid invalidity of the '154 patent, MMJK tries to argue that UBT relies on various websites to make its argument, when in fact UBT's reliance on the express teachings found in the four corners of the FAQ reference, which is a single document, is proper.

MMJK acknowledges that "the patentee must show that the alleged infringer's defenses lacks substantial merit. *Oakley, Inc.*, 316 F.3d at 1340 (Fed.Cir.2003)" MMJK Reply Brief at 5. MMJK has failed to do so. By proving that all of the limitations of the '154 patent claims are found in the FAQ reference, a fact MMJK does not contest, UBT has not only raised a substantial question as to invalidity, but it has proven that the '154 patent is invalid. *See Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760, 772, 218 USPQ 781 (Fed. Cir. 1983), cert. denied, 465 U.S. 1026 (1984) ("The law of anticipation does not require that the reference 'teach' what the subject patent teaches. Assuming that a reference is properly

'prior art,' it is only necessary that the claims under attack, as construed by the court, 'read on' something disclosed in the reference, i.e., all limitations of the claim are found in the reference, or 'fully met' by it.") To more clearly show that all of the limitations of the independent claims of the '154 patent are found in the FAQ reference, UBT includes with this response Exhibit W, which is a detailed claim chart showing all the limitations and corresponding quotes from the FAQ references, showing the FAQ reference contains all the limitations of the independent claims.[5]

MMJK also inappropriately argues that, among others, the BugsysClub.com, PokerSchoolOnline.com, and the Herrmann publication each do not teach certain limitations of the '154 patent claims. See Exhs. C and D, and Exh. A to the Hickman Affidavit. In response, UBT includes Exhibits W, U, and Z, which are detailed claim charts showing how each of the limitations MMJK alleges are not taught by BugsysClub.com, PokerSchoolOnline.com and the Herrmann publication, respectively, are in fact taught by those references. The clear language quoted from the particular prior art reference makes it clear that each reference independently teaches all the limitations of the independent claims of the '154 patent. Accordingly, BugsysClub.com, PokerSchoolOnline.com and the Herrmann publication each anticipate the alleged inventions of '154 patent, rendering it invalid.

**B.    THE '154 PATENT IS OBVIOUS IN LIGHT OF THE PRIOR ART**

MMJK argues that UBT's expert, Mr. Rosenthal, did not consider the "*Graham* factors" when analyzing whether the '154 patent is obvious in light of the prior art. *See Graham v. John Deere Co.*, 383 U.S. 1 (1966). MMJK is wrong. Mr. Rosenthal did consider the *Graham* factors in conducting his analysis. By analyzing whether various pieces of prior art anticipate the claims of the '154 patent, he analyzed "the scope and content of the prior art" and "differences between the prior art and the claims at issue" in the '154 patent. It is clear that Mr. Rosenthal also determined "the level of skill in the pertinent art" when he stated "I also performed independent research to get a sense of the level of ordinary skill for games, games of skill, gaming, and internet and computer network technology." Opening Rosenthal Declaration at ¶ 33. Mr. Rosenthal was also aware of the various objective factors that constitute some of

---

[5] Due to page limit constraints, invalidity of the few dependent claims has not been addressed in this surreply. However, the limitations in all the dependent claims would be obvious to one of ordinary skill in the art. More importantly, many if not all of those limitations appear in the cited prior art. If requested by the Court, UBT is prepared to address issues regarding invalidity of the few dependent claims.

the *Graham* factors and considered those factors when performing his obviousness analysis. Accordingly, despite MMJK's assertions, Mr. Rosenthal did consider the *Graham* factors.

MMJK also argues that Mr. Rosenthal never addresses "why these references are combinable or even how they would be combined." Mr. Rosenthal specifically stated "[a]ll these prior art references are indirectly related technology areas," addressing why the references are combinable. *Id*. He also stated "there is no ingenuity involved in combining elements from one prior art reference to the other. The results of any combination are predictable and I would expect them to be successful." This indicates how the references can be combined. *Id*. Accordingly, Mr. Rosenthal did consider the *Graham* factors.

MMJK also argues that the "Frequently Asked Questions" prior art document for BugsysClub.com, PokerSchoolOnline.com and PokerPages.com "actually teach away from their combination." A "teaching away" is a clear statement in a reference which teaches away or is contrary to the claimed invention of interest. In support of its position, MMJK argues that "[t]here would have been no benefit to modifying any of these three Web sites to include features from the other since the whole intent was to have different Web sites...." MMJK makes a similar "no benefit to modifying" argument with regard to the Herrmann publication. The flaw in MMJK's argument is simple. Even assuming MMJK is correct and there is no benefit to modifying the indicated web site or publication, not having a benefit is not a "teaching away." Accordingly, MMJK fails to provide any "teaching away" evidence.

Even if this Court concludes that the prior art references described above do not anticipate the claims of the '154 patent, the claims of the '154 patent would still be obvious to a person of ordinary skill in the art. Each aspect of the claims that is not taught by the prior art would be found in one or more of the various pieces of prior art and/or be common knowledge. Prior art references need not expressly teach each element of the claim to invalidate the claim as obvious. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 156 (1989) ("Both the novelty and nonobviousness requirements of federal patent law are grounded in the notion that concepts within the public grasp, or those so obvious that they readily could be, are the tools of creation available to all.") For example, the limitation "non-subscription player is limited to one entry per tournament" is an inherent part of most if not all computer networked game or tournament systems. (Rosenthal Decl. ¶¶ 73 & 101.) Accordingly, it is within the common knowledge of one of ordinary skill in the art that that tournaments generally are inherently limited to one

8

ULTIMATE BLACKJACK TOUR, LLC'S SURREPLY

entry per tournament. *Id.* A similar analysis can be applied to other commonly known limitations found in the claims of the '154 patent. *Id.* Therefore, the prior art references discussed above, in any combination, render the claims of the '154 patent obvious to one of ordinary skill in the art. This is especially true because the new obviousness test enunciated in *KSR Int'l Co. v. Teleflex, Inc.*, 127 S.Ct. 1727 (2007) is less stringent than the obviousness test that applied when the '154 patent was examined by the Patent Office. This new, more relaxed test for obviousness requires a finding of obviousness when the claimed invention is a predictable variation that can be implemented by one of ordinary skill. All of the limitations of the claims of the '154 patent, including the limitation the Examiner indicated were novel and resulted in the issuance of the '154 patent (a tournament having both subscribing and non-subscribing members and the non-subscribing members being limited to one entry per tournament) are all common knowledge to one of ordinary skill and are taught by various pieces pf prior art. Accordingly, because the claimed inventions of the '154 patent are nothing more than a predictable variation of computer networked game systems and on-line game tournaments found in the prior art, the '154 claims are obvious to one of ordinary skill in the art.

### C.  MMJK Committed Inequitable Conduct

Rebutting UBT's argument that MMJK committed inequitable conduct, MMJK replies that it "did not fail to disclose any information to the Patent Office." MMJK is simply wrong. The Notice of Allowance from the Examiner of the '154 patent indicated that the Herrmann publication "**has not been considered as to the merits.**" (Exh. L to Rosenthal Opening Declaration, page 2, emphasis added). Although MMJK provides some explanation as to why MMJK did not fail to disclose one of the Walker references, MMJK's response to UBT's inequitable conduct allegations is noticeably silent regarding why it is not guilty of intentionally preventing the Patent Office from considering the Herrmann publication. Considering that the Herrmann reference is not listed on the face of the '154 patent, it cannot be disputed that it was never considered by the Patent Office. As discussed above and shown in Exhibit Z, the Herrmann reference is highly relevant and anticipates all the independent claims of the '154 patent. Accordingly, by intentionally refusing to provide the information which would have allowed the Herrmann publication to be considered by the Patent Office, MMJK committed inequitable conduct, rendering the '154 patent invalid. (Rosenthal Decl., ¶¶178-183.)

## IV. CLAIM CONSTRUCTION AND EXTRINSIC EVIDENCE IS REQUIRED

A preliminary injunction is an extraordinary remedy. *See Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1364 (Fed. Cir. 1997). Considering the substantial questions UBT has raised and the complexity and volume of the issues in dispute, under no circumstances is MMJK entitled to a preliminary injunction. Here the parties disagree on numerous material issues (*e.g.*, the proper construction of the claim terms "prize pool," "any eligible runner-up players" and "immediate value," the level of skill of one of ordinary skill in the art, the disclosure made by the prior art references, whether the prior art teaches all the limitations of the '154 patent claims, and if the prior art, in any number of combinations, renders the claims of the '154 patent obvious). To properly resolve these disputes, "extrinsic evidence in the form of expert testimony can be useful to a court for a variety of purposes" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (C.A. Fed., 2005). Additionally, due to the nature of many of the disputes, a Markman or claim construction hearing might help resolve some of the presently disputed issues in this case. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). Even if MMJK could withstand summary judgment in this case, which is doubtful, UBT would be entitled to a Markman hearing prior to trial. Accordingly, granting MMJK's preliminary injunction considering the substantial questions raised about the '154 patent, the complexity of the issues and the fact that MMJK might not even survive summary judgment would be contrary to the strict standards governing such extraordinary relief. Accordingly, MMJK's preliminary injunction motion should be denied.

## V. CONCLUSION

MMJK's misleading reply arguments have no merit and are flawed. UBT has overwhelmingly met its burden by raising multiple substantial questions of non-infringement and invalidity. Therefore, MMJK's preliminary injunction motion should be denied.

DATED: August 8, 2007                          GREENBERG TRAURIG, LLP


By:____/S/_____
MATTHEW S. STEINBERG
Attorneys for Defendant
Ultimate Blackjack Tour, LLC

# CERTIFICATE OF SERVICE

I, hereby certify that on August 8, 2007, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to the e-mail addresses denoted below:

DERGOSITS & NOAH LLP
Todd A. Noah (SBN 152328) (tnoah@dergnoah.com)
Paul K. Tomita (SBN 188096) (ptomita@dergnoah.com)
Four Embarcadero Center, Suite 1450
San Francisco, California 94111
Telephone: (415) 705-6377
Facsimile: (415) 705-6383

DATED: August 8, 2007                    GREENBERG TRAURIG, LLP


                                         By:_____/S/_____
                                         MATTHEW S. STEINBERG
                                         Attorneys for Defendant
                                         Ultimate Blackjack Tour, LLC