# TENTATIVE RULING

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MMJK, INC., | |
| Plaintiff(s), | No. C07-3236 BZ |
| v. | **ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| ULTIMATE BLACKJACK TOUR LLC, | |
| Defendant(s). | |

This patent dispute is between rival operators of online gambling tournaments, which are operated legally if they conform with the Unlawful Internet Gambling Enforcement Act of 2006.[1]  For purposes of this motion for preliminary injunction, a principal distinction between the rival tournaments is the timing of the distribution of prizes.  In plaintiff's tournaments, the prizes to the winner and the runners-up are distributed after the tournament ends.  In

---

[1]   All parties have consented to my jurisdiction, including entry of final judgment, pursuant to 28 U.S.C. § 636(c) for all proceedings.

1

# **TENTATIVE RULING**

defendant's tournaments, most runners-up are credited their "tournament point" prizes prior to the completion of the tournament and can immediately use those points to enter other tournaments.

Plaintiff's tournament is protected by U.S. Patent No. 7,094,154 ("'154 patent"), filed on December 30, 2004, and issued on August 22, 2006.  The patent is "directed to computer networked multi-player games of both chance and skill that allow subscription-based and non-subscription players (using an "alternative method of entry") a chance to win prizes that have immediate value (i.e., cash, cash-equivalent notes and objects)."  Pl.'s Mot. at 2.  Plaintiff has been operating online gambling tournaments based on the '154 patent since November 2005.[2]  Kellerman Decl. ¶ 3.  On June 17, 2007, plaintiff claims to have become aware that defendant was hosting online tournaments that infringe its patent.  Plaintiff sued defendant on June 19, 2007, and now moves to enjoin defendant from continuing to host the challenged tournaments.

"A preliminary injunction is a 'drastic and extraordinary remedy that is not to be routinely granted.'"  National Steel Car, Ltd. v. Canadian P. Ry., Ltd., 357 F.3d 1319, 1324 (Fed. Cir. 2004) (quoting Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566, 1568 (Fed. Cir. 1993)).  The parties agree that,

---

[2]    Plaintiff began its services using the web domain www.betzip.com.  Kellerman Decl. ¶¶ 2-3.  Plaintiff now uses the web domain www.pureplay.com.  Kellerman Supp. Decl. ¶ 4.

2

1 **`TENTATIVE RULING`**

2 for plaintiff to prevail on its motion for preliminary
3 injunction, it must establish "four factors: '(1) a reasonable
4 likelihood of its success on the merits; (2) irreparable harm
5 if an injunction is not granted; (3) a balance of hardships
6 tipping in its favor; and (4) the injunction's ... impact on
7 the public interest.'" Sanofi-Synthelabo v. Apotex, Inc., 470
8 F.3d 1368, 1374 (Fed. Cir. 2006) (quoting Amazon.com, Inc. v.
9 Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir.
10 2001)).

11     To establish likelihood of success on the merits requires
12 plaintiff to show "that, in light of the presumptions and
13 burdens that will inhere at trial on the merits, (1)
14 [plaintiff] will likely prove that [defendant] infringes the
15 ... patent, and (2) [plaintiff's] infringement claim will
16 likely withstand [defendant's] challenges to the validity and
17 enforceability of the ... patent." Amazon.com, Inc., 239 F.3d
18 at 1350 (citing Genentech, Inc. v. Novo Nordisk, A/S, 108 F.3d
19 1361, 1364 (Fed. Cir. 1997)).  In other words, if defendant
20 "raises a substantial question concerning either infringement
21 or validity, i.e., asserts an infringement or invalidity
22 defense that the [plaintiff] cannot prove 'lacks substantial
23 merit,' the preliminary injunction should not issue." Id. at
24 1350-51 (quoting Genentech, Inc., 108 F.3d at 1364).

25     In considering likelihood of success on infringement, the
26 court first, construes the scope and meaning of the patent
27 claims asserted and second, compares the construed claims to
28 the allegedly infringing device. Oakley, Inc. v. Sunglass Hut

# **TENTATIVE RULING**

Intern., 316 F.3d 1331, 1339 (Fed. Cir. 2003). The burden of proof remains on the plaintiff. See, e.g., Amazon.com, Inc., 239 F.3d at 1350 (explaining that the movant must show that it is likely prove infringement and that it will likely withstand any invalidity defenses).

Based on the record before me, plaintiff has failed to demonstrate the likelihood that it will succeed in its claims construction arguments. As explained earlier, a key distinction between the rival tournaments is that plaintiff distributes prizes to the winner and "any eligible runner up players" after completion of the tournament. Defendant begins to distribute prizes to a runner-up as soon as the player is eliminated.[3] See Rosenthal Decl. ¶¶ 24-26; Def.'s Surreply at 5. Independent claims 1 and 5 of the '154 patent require the disbursement of "the prize pool to the winning player and any eligible runner up players in the form of prizes that have immediate value, subsequent to completion of the tournament." Thus, defendant argues, its tournaments do not infringe because of the limitation of these claims that all the prizes be distributed after the tournament ends.

To avoid defendant's argument, plaintiff contends that

---

[3] Defendant's practice is to award winners some combination of cash or tournament points, and to credit runners-up with tournament points upon elimination and prior to completion of the tournament. See Def.'s Opp. at 6; Rosenthal Decl. ¶¶ 22-25; Pl.'s Opp. at 3-4; Noah Supp. Decl. ¶¶ 2, 3, Exh.'s D, E. According to defendant, the tournament points, also referred to as prize points or playing chips, may be redeemed "to enter other games or tournaments." Def.'s Opp. at 5; see also Def.'s Surreply at 5.

4

1 **TENTATIVE RULING**

2 "as properly construed" the term "any eligible runner-up
3 players" in the '154 patent does not require that every
4 runner-up player wait until after the completion of the
5 tournament to collect a prize and the "Tournament Point"
6 prizes defendant offers do not constitute "prizes that have
7 immediate value."  Based on the record before me, it does not
8 appear likely that plaintiff will establish either claim
9 construction.  Plaintiff's construction seems to strain the
10 plain meaning of the terms "any" and "immediate value" and
11 attempts to redefine the conception of the "prize pool" as
12 something less than all the prizes.  See Rosenthal Decl. in
13 Support of Surreply ¶¶ 13, 14, Exh's Q, R.  Plaintiff has not
14 persuaded me that tournament points that allow a player to
15 immediately enter another tournament do not have immediate
16 value.

17      In short, plaintiff has failed to demonstrate that it is
18 reasonably likely to prove that the challenged tournaments
19 infringe the '154 patent, be it literal or under the doctrine
20 of equivalents.  On this record, substantial questions remain
21 as to plaintiff's likelihood of success on infringement.

22      Nor has plaintiff demonstrated that it is likely to
23 overcome defendant's invalidity defenses.  Where a defendant
24 raises invalidity as a defense to a motion for preliminary
25 injunction, the plaintiff retains the burden of establishing
26 likelihood of success on the merits.  See Oakley, Inc. v.
27 Sunglass Hut Intern., 316 F.3d 1331, 1339 (Fed. Cir. 2003);
28 Helifix, Ltd. v. Blok-Lok, Ltd., 208 F.3d 1339, 1351 (Fed.

## **TENTATIVE RULING**

Cir. 2000). "Vulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial. The showing of a substantial question as to invalidity thus requires less proof than the clear and convincing showing necessary to establish invalidity itself." Amazon.com, Inc., 239 F.3d at 1359.

    If "the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains," the patent is invalid as obvious. 35 U.S.C. § 103(a). Recently, the Supreme Court rejected a rigid obviousness analysis requiring that "some motivation or suggestion to combine the prior art teachings ... be found in the prior art, the nature of the problem, or the knowledge of a person having ordinary skill in the art." KSR Intern. Co. v. Teleflex Inc., 127 S.Ct. 1727, 1734 (2007) (internal quotation and citation omitted). Instead, the Court explained:

> When a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one. If a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability. For the same reason, if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill.

6

1 **`TENTATIVE RULING`**

2  Id. at 1740.  The Court emphasized that if design needs or
3  market pressures urge solution to a problem, "and there are a
4  finite number of identified, predictable solutions, a person
5  of ordinary skill has good reason to pursue the known
6  options...."  The combination of elements of prior art, under
7  this circumstance, is more a matter of "common sense" and may
8  demonstrate obviousness.  Id. at 1742.

9   Here, defendant claims that prior art rendered obvious
10 the technology claimed in the '154 patent.  In particular,
11 defendant points to online gaming networks maintained at
12 Bugsysclub.com, Pokerschoolonline.com, and Pokerpages.com.
13 See Def.'s Opp. at 7.  In the context of describing why these
14 cites do not anticipate the '154 patent, plaintiff asserts
15 that each site offered a different kind of gaming experience.
16 See Pl.'s Reply at 6-9.  Thus, Bugsysclub was a "play for
17 money" only gaming site with no free play and no subscription-
18 based memberships.  Id. at 6.  Pokerpages.com amounted to a
19 "free play site only" with no subscription-based memberships.
20 Id. at 6, 8. Pokerschoolonline.com hosted "a subscription site
21 with no free play."  Id.  Defendant counters by explaining
22 that the sites themselves are integrated by, for example,
23 allowing an individual to play on all three sites using the
24 same software and the same username and password.  See
25 Rosenthal Decl. in Support of Surreply ¶¶ 51, 52.

26   Substantial questions exist about whether plaintiff is
27 likely to overcome the obviousness defense.  All the claims of
28 the '154 patent appear to have been taught by the prior art.

# **TENTATIVE RULING**

Plaintiff opines that the '154 patent's inclusion of subscription and non-subscription-based paying and non-paying players in one site distinguishes it from the previous art. Pl.'s Reply at 15.[4] All this amounts to, however, is a combination of technology previously employed.  The use of three separate sites did not teach away from that combination, particularly in light of the integration of the Bugsysclub sites and plaintiff's own explanations of the market forces at work in the online gaming industry.[5]  The record suggests that a person experienced in the art might well have recognized that the teachings from the prior art could be beneficially combined.  See Rosenthal Decl. ¶¶ 4-11, 33, 153-63; Rosenthal Decl. in Support of Surreply ¶ 176.  In light of the KSR case, plaintiff has failed to demonstrate that it is likely to overcome defendant's assertion that the '154 patent is invalid as obvious.

   Plaintiff's failure to establish a likelihood of success on the merits alone precludes issuance of a preliminary injunction.  See Polymer Technologies, Inc. v. Bridwell, 103 F.3d 970, 973-74 (Fed. Cir. 1996) (citing Reebok International

---

[4]   Plaintiff points to no other claims of the '154 patent not taught by this prior art.  Pl.'s Reply at 15.

[5]   Plaintiff's President and CEO asserts that "it is well known in this industry that if a provider of online gaming services reaches a 'critical mass' in terms of numbers of customers, it is nearly impossible for other providers to achieve comparable market shares."  Kellerman Decl. ¶ 7.  Thus, there is a constant push in the industry to expand market share.  One obvious way to do so is to create a network that can capture both paying and non-paying players.

8

# **TENTATIVE RULING**

Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1556 (Fed. Cir. 1994)). However, I additionally conclude that plaintiff has not demonstrated that existence of irreparable harm.

Where, as here, plaintiff fails to make a strong showing on likelihood of success, there is no presumption of irreparable harm.  See Eli Lilly and Co. v. American Cyanamid Co., 82 F.3d 1568, 1578 (1996); Yamashita v. Wilbur-Ellis Co., 2006 WL 1320470, at *6 (N.D. Cal).  Plaintiff's argument that it will suffer irreparable harm centers on the claim that it "may never be able to capture the market share Defendant has unlawfully obtained through its infringement."  Pl.'s Mot. At 7; see also Pl.'s Reply at 18; Millar Decl. ¶ 6 (explaining that plaintiff's damages may be calculable by using "generally accepted accounting principles").[6]

Plaintiff's argument suffers from a serious flaw: it presumes that it would succeed in capturing some material portion of defendant's market absent defendant's current presence therein.  The record clearly establishes that there are other players in this market.  Simply because "millions of U.S. consumers are now looking for alternative places to play online poker," Kellerman Decl. ¶ 6, does not mean that

---

[6] Defendant objected to a number of statements made in the Kellerman Declaration relating to the online gaming market and the nature and amount of harm plaintiff will suffer without issuance of an injunction, arguing that the statement demonstrated a lack of foundation for personal knowledge and, in some cases, amounted to an improper lay opinion or hearsay.  See Def.'s Obj.'s to Evidence Nos. 2-4.  In light of Mr. Kellerman's position with plaintiff, I find these objections to be without merit.  They are therefore **OVERRULED**, and I will give the statements the weight each deserves.

# **TENTATIVE RULING**

plaintiff has lost market share to defendant or that plaintiff will necessarily capture defendant's current share.[7]  While plaintiff's discussion of its own performance and success are in some regard helpful, see Kellerman Supp. Decl. ¶¶ 10, 11, the numbers are presented in a vacuum; there is no comparison with other market players.  Moreover, it is unclear why plaintiff would not have the chance to recapture this share when, and if, defendant is found to have infringed and is later enjoined from pursuing the challenged gaming, and why damages would not be an adequate remedy for whatever losses plaintiff may incur.

"[N]either the difficulty of calculating losses in market share, nor speculation that such losses might occur, amount to proof of special circumstances justifying the extraordinary relief of an injunction prior to trial."  Nutrition 21 v. U.S., 930 F.2d 867, 871 (Fed. Cir. 1991) (citing Nuclear-Chicago Corp. v. Nuclear Data, Inc., 465 F.2d 428 (7th Cir. 1972)).  In Nutrition 21, the Federal Circuit warned that "reliance on *possible* market share loss would apply in every patent case where the patentee practices the invention," id. (emphasis added), and emphasized the importance of an adequate

---

[7] Kellerman states that, in light of the passage of the Unlawful Internet Gambling Enforcement Act, 31 U.S.C. 5361, et seq., "I believe [plaintiff's website] is [the] only legal option . . . ."  Kellerman Decl. ¶ 6.  This statement, however, goes largely unexplained.  While plaintiff includes some explanation of why it thinks its own business is legal, see Kellerman Supp. Decl. ¶ 13, Exh. J, there is no explanation as to why it is the only legal site.

# **TENTATIVE RULING**

record supporting such a claim.  Id. at 872.[8]  On this record, plaintiff has not established that it will suffer irreparable harm without the issuance of an injunction.

    Defendant makes a number of other arguments such as that plaintiff engaged in inequitable conduct, that the court need not reach.  Likewise, the other two remaining preliminary injunction factors are not significant.  The public interest is minimally implicated by the grant or denial of an injunction.  The balance of the hardships should an injunction issue arguably tips in defendant's favor.  Plaintiff's showing about loss of market share is somewhat speculative, whereas an injunction would clearly exclude defendant from the market and could have collateral consequences to other aspects of defendant's business, such as its television program. Cf. Pfizer v. Teva Pharmaceuticals, USA Inc. 429 F.3d 1364, 1382 (Fed. Cir. 2005).  Since plaintiff has failed to carry its burden to demonstrate a likelihood of success on the merits, or that it will suffer irreparable harm absent court intervention, plaintiff's motion for a preliminary injunction

---

[8] Contrary to plaintiff's argument, this is not a case such as Oakley, Inc., in which the court, concluding that plaintiff would be afforded the presumption of irreparable harm, noted that plaintiff had demonstrated a nearly exclusive market share over the product in question, and that defendants were about to release a new product threatening that share. 316 F.3d at 1345.  Here, plaintiff has not established an exclusive market share, or even the likelihood of establishing such a share, and defendant's "product" is already on the market.  That defendant is prepared to launch a marketing campaign relating to its gaming and television interests does not change this analysis.  See Pl.'s Reply at 18.

# TENTATIVE RULING

is **DENIED**.[9]

Dated: August 14, 2007

_____
Bernard Zimmerman
United States Magistrate Judge

G:\BZALL\-BZCASES\MMJK V.ULTIMATE BLACKJACK\Order Deny Prelim Inj 5.BZ VERSION.TENTATIVE.RULING.wpd

---

[9] Both plaintiff and defendant registered a number of objections to evidence.  In this Order, I have ruled only on those objections relating to evidence I relied on in deciding plaintiff's motion.  As to the remaining objections, they are **OVERRULED** as moot.

12