GREENBERG TRAURIG, LLP
MATTHEW S. STEINBERG (SBN 82969)
STEVE P. HASSID (SBN 219913)
2450 Colorado Avenue, Suite 400 East
Santa Monica, California 90404
Telephone: (310) 586-7700
Facsimile: (310) 586-7800
Email: steinbergm@gtlaw.com; hassids@gtlaw.com

Attorneys for Defendant
Ultimate Blackjack Tour, LLC

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MMJK, Inc.,<br><br>         Plaintiff,<br><br>vs.<br><br>ULTIMATE BLACKJACK TOUR, LLC<br><br>         Defendant. | CASE NO. C 3:07-CV-03236-BZ<br><br>**DEFENDANT ULTIMATE BLACKJACK TOUR, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MMJK'S MOTION TO DISMISS THE COMPLAINT AND COUNTERCLAIMS**<br><br>[Filed Concurrently with Declaration of Steve P. Hassid]<br><br>DATE:      December 5, 2007<br>TIME:      10:00 a.m.<br>LOCATION: Courtroom G<br>JUDGE:     Hon. Bernard Zimmerman |

---

**UBT'S OPPOSITION TO MMJK'S MOTION TO DISMISS COMPLAINT AND COUNTERCLAIMS**

## I. PRELIMINARY STATEMENT

MMJK's motion to voluntarily dismiss its case *with prejudice* has only one purpose - to try and prevent UBT from obtaining costs and reasonable attorneys' fees to which it is entitled as the prevailing party. Regardless of the outcome of MMJK's motion to dismiss with prejudice, UBT is entitled to recover prevailing party costs and reasonable attorneys' fees. Considering UBT has prevailed on every issue raised in this dispute, this Court can only conclude UBT to be the prevailing party and award it the appropriate relief.

## II. STATEMENT OF FACTS

On June 19, 2007, MMJK filed suit against UBT alleging UBT's website infringed certain business method patent claims of the '154 patent. (DI No. 1). On July 11, 2007, MMJK filed a motion for preliminary injunction against UBT. On August 22, 2007, this Court denied MMJK's preliminary injunction. In doing so, this Court concluded, *inter alia*, that "plaintiff has failed to demonstrate a likelihood that it will succeed in its claim construction arguments....[p]laintiff has not persuaded me that its claim constructions are likely to be adopted...[n]or has plaintiff demonstrated that it is likely to overcome defendant's invalidity defenses....Substantial questions exist about whether plaintiff is likely to overcome the obviousness defense. All or nearly all of the '154 patent claims appear to have been taught by the prior art and, in particular, the Bugsyclub 'Frequently Asked Questions' page...In light of the KSR case, plaintiff has failed to demonstrate that it is likely to overcome defendant's assertion that the '154 patent is invalid as obvious." *See* Order Denying Plaintiff's Motion for Preliminary Injunction at 3-10 (DI No. 36).

On or about August 23, UBT offered to settle the present case. More specifically, in exchange for MMJK's agreement to dismiss the present case and not sue UBT in the future on any patent, UBT agreed to dismissal of the present case. MMJK rejected this offer on or about September 4, 2007 and demanded, in the alternative, that UBT agree to a stay of this case pending the outcome of MMJK's pending patent application related to the '154 patent, U.S. Patent Application No. 11/507,795, ('795 application) which published on December 14, 2006 as U.S. Patent Publication No. 20060281555. Declaration of Steve P. Hassid at ¶¶4-5, Exhibit A. MMJK indicated that it would amend its present

1

complaint to add any patents that issue from that pending '795 application, thereby, according to MMJK, creating additional infringement liability for UBT. *Id.* at ¶5.

UBT rejected MMJK's offer for a stay indicating that it believed MMJK's suit to be completely meritless and that it wanted quick and final resolution of this matter and full release of liability regarding all of MMJK's present and future patents, including those derived from the pending '795 application. *Id.* UBT also indicated that absent a settlement, it would move for summary judgment of non-infringement and invalidity and request attorneys' fees. *Id.*

On or about September 16, 2007, MMJK informed UBT that it was reconsidering UBT's settlement proposal. *Id.* at 6. On or about September 26, 2007, MMJK agreed to dismiss the present case with prejudice and forwarded a draft stipulation to UBT for its approval. *Id. See* MMJK's Motion to Dismiss, Exhibit B. Without any indication from UBT that it would agree to such terms, MMJK's proposed stipulation indicated "[e]ach party will bear its own attorneys' fees and costs." *See* MMJK Motion to Dismiss, Exhibit B. UBT rejected the stipulation on the basis that it was the prevailing party and would not agree to bear its own attorneys' fees and costs unless it was part of a larger overall settlement that included present and future MMJK patents.

On October 2, 2007, MMJK filed the Declaration of Jason Kellerman, which contained a covenant not to sue UBT for infringement of the '154 patent. *Id.* at Exhibit D. At the same time, MMJK requested UBT stipulate to the dismissal of MMJK's infringement claim and UBT's counterclaim for declaratory judgment of non-infringement, invalidity and unenforceability. *Id.* Once again, without any indication that UBT would agree to such terms, MMJK's proposed stipulation indicated "[e]ach party will bear its own attorneys' fees and costs." *Id.* MMJK informed UBT that if it did not stipulate, MMJK would file a motion to dismiss. *Id.* For the same reasons it declined MMJK's September 26, 2007 offer, UBT declined MMJK's essentially identical October 2, 2007 offer. MMJK then filed its motion to dismiss on October 3, 2007. Interestingly, because MMJK knows UBT is entitled to court costs and attorneys' fees as the prevailing party, unlike either of the proposed stipulations MMJK offered on or about September 26, 2007 and October 2, 2007, MMJK's proposed order granting its motion to dismiss does not request that this Court order that each party to bear its own attorneys' fees and costs.

## III. LEGAL STANDARD

Federal Circuit law governs questions of patent law, while the law of the regional circuit applies to procedural questions that are not specific to patent law. *See Madey v. Duke University*, 307 F.3d 1351, 1358 (Fed. Cir. 2002). District courts have uniformly applied Federal Circuit law in patent cases when addressing the issue whether a covenant not to sue by the patent holder eliminates subject matter jurisdiction over declaratory judgment counterclaims. *See, e.g., Synopsys, Inc. v. Ricoh Co.*, 343 F.Supp.2d 883, 888 (N.D. Cal. 2003).

The Declaratory Judgment Act provides, "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The phrase 'case of actual controversy' 'refers to the type of "Cases" and "Controversies" that are justiciable under Article III.' *MedImmune*, 127 S. Ct. at 771; *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)." *Sony Electronics, Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1283 (Fed. Cir. 2007).

In *MedImmune*, the Supreme Court held that a party seeking to base jurisdiction on the Declaratory Judgment Act bears the burden of proving that the facts alleged, "under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant" relief. *MedImmune*, 127 S. Ct. at 771.

Following *MedImmune*, *Sony Electronics* appears to be the Federal Circuit's most recent pronouncement on the standard for determining the existence of a case or controversy sufficient to warrant declaratory relief. In that case, the Federal Circuit noted there is no precise test applicable to every case seeking such relief; as a result, courts must examine the facts and circumstances of each case to determine whether there is a substantial controversy of "sufficient immediacy and reality" to warrant relief:

> The Supreme Court has not articulated a bright-line rule for distinguishing those cases that satisfy the actual controversy requirement from those that do not. Indeed, it has stated that "[t]he difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a

3

controversy." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Instead of fashioning a precise test, the Supreme Court has required only that the dispute be "'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *MedImmune,* 127 S. Ct. at 771 (quoting *Aetna*, 300 U.S. at 240-41). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas.*, 312 U.S. at 273.

*Sony Electronics*, 497 F.3d at 1283 (citations omitted). Prior to *MedImmune*, Federal Circuit case law required a party seeking declaratory relief to establish "both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." *See, e.g., Super Sack*, 57 F.3d at 1058 (quoting *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1993)). The Supreme Court's opinion in *MedImmune* rejected the Federal Circuit's reasonable apprehension of suit test. *SanDisk*, 480 F.3d at 1380; see also *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1339 (Fed. Cir. 2007).

In *SanDisk*, the Federal Circuit applied *MedImmune* and stated that Article III jurisdiction may be met "where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do[.]" 480 F.3d at 1381. The court stated "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights. *SanDisk*, 480 F.3d at 1381.

The Federal Circuit's "post-MedImmune decisions, while not attempting to define the outer boundaries of declaratory judgment jurisdiction, have made clear that a declaratory judgment plaintiff does

not need to establish a reasonable apprehension of a lawsuit in order to establish that there is an actual controversy between the parties." *Sony Electronics*, 497 F.3d at 1284. "The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since." *Benitec*, 495 F.3d at 1344 (cited cases omitted). "'If . . . a party has actually been charged with infringement of the patent, there is, necessarily, a case or controversy adequate to support jurisdiction' at that time." *Id.* (quoting *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (1993)). Once the burden to establish the existence of a case or controversy has been met, jurisdiction continues in the absence of further information to the contrary. *Id.*

In this case, plaintiff's patent infringement claims were pending at the time UBT filed its declaratory judgment counterclaims. Because UBT had been charged with infringement of the '154 patent, there was necessarily a case or controversy adequate to support declaratory judgment jurisdiction at that time. *See Benitec*, 495 F.3d at 1345. The only issue remaining is whether jurisdiction continues to exist. *Id.*

In *Benitec*, the Federal Circuit noted that the disapproved "reasonable apprehension of immediate suit" test no longer applies to determine whether subject matter jurisdiction existed over claims for declaratory judgment. *Id.* In *Benitec*, the plaintiff sued for infringement of patents concerning RNA interference (RNAi) technology, and the defendant filed counterclaims seeking declarations of invalidity and unenforceability. *Id.* at 1342. The plaintiff subsequently sought dismissal on the basis that it had no viable infringement claims against the defendant after the Supreme Court's decision in *Merck KgaA v. Integra Lifesciences I, Ltd.*, 545 U.S. 193 (2005). *Id.* at 1343. The defendant objected to dismissal, arguing that jurisdiction still existed because it intended to expand its technology to cover products that would be allegedly infringing. *Id.* at 1348.

Applying the *MedImmune* standard, the Federal Circuit upheld the dismissal of the defendant's counterclaims for lack of subject matter jurisdiction, concluding there was no "substantial controversy, between [the parties], of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 1349. The defendant's activities as related to the patent-in-suit did not present a case or controversy of sufficient immediacy and reality to warrant declaratory judgment jurisdiction where its

5

UBT'S OPPOSITION TO MMJK'S MOTION TO DISMISS COMPLAINT AND COUNTERCLAIMS
CASE NO. C 3:07-CV-03236-BZ

activities were not currently infringing and would not become infringing until it took additional action not planned for several years in the future. *Id.* at 1346.

Unlike Benitec, the Court in *Sony Electronics* recognized that plaintiff is not required "to put itself at further risk by continuing to engage in the allegedly infringing activity before seeking a declaration of its rights." *Sony Electronics*, 497 F.3d at 1284. In the *Sony Electronics* case, the Federal Circuit reversed the district court's dismissal of declaratory judgment claims of invalidity in a case concerning "V-chip" parental-rating control technology, concluding that an actual controversy did exist between the parties.

The Federal Circuit concluded that an actual controversy existed between Sony and the patent holder which was "without a doubt, 'definite and concrete, touching the legal relations of parties having adverse legal interests.'" *Sony Electronics*, 497 F.3d at 1285 (quoting *Aetna*, 300 U.S. at 240-41).

Accordingly, in order to determine whether or not MMJK's covenant not to sue divested this Court of subject matter jurisdiction, this Court must therefore determine whether, under the facts and circumstances of this case, the covenant not to sue extinguishes any actual case or controversy between UBT and MMJK.

## IV. ARGUMENT

### A. AN "ACTUAL CASE OR CONTROVERSY" EXISTS

#### 1. MMJK'S RELATED PENDING APPLICATION(S) CREATE AN ACTUAL CONTROVERSY

Plaintiff MMJK relies heavily on the holding in *Benitec Australia, Ltd. v. Nucleonics, Inc.*, to support its position that no actual controversy exists because its covenant not to sue divested this Court of subject matter jurisdiction over UBT's counterclaims for declaratory judgment. MMJK's Motion at 4. The *Benitec* case is distinguishable from the present case.

In *Benitec*, the defendant's potentially infringing activities (developing and submitting information to the U.S. Food and Drug Administration (FDA) concerning human applications of gene silencing) were completely protected from infringement claims by 35 U.S.C.S. § 271(e)(1) until, and only if, the defendant filed for FDA approval. In the present case, UBT is not provided any protection against MMJK's threatened and pending infringement claims.

Additionally, in *Benitec*, there was no showing that the defendant anticipated an imminent filing that could result in infringement liability. In the present case, according to MMJK's allegations and threats, the on-line gaming tournaments UBT presently provides create infringement liability for UBT because the '154 patent and MMJK's rights in related pending application(s), including '795 application. MMJK's covenant not to sue is clear that it "only extends to the claims of the '154 patent....and does not release any future liability of UBT based upon any patent or patents that may issue to MMJK related to the '154 patent." *See* Decl. of Jason Kellerman Re Covenant Not to Sue ¶2. MMJK's covenant and prior statements make clear that MMJK intends to sue UBT on the patents that issue from one or more related continuation patent applications of the '154 patent, having essentially identical if not identical disclosures as the '154 patent. This fact alone creates an actual controversy between the parties.

Notably, the court in *Benitec* stated, "[a] useful question to ask in determining whether an actual controversy exists is what, if any, cause of action the declaratory judgment defendant may have against the declaratory judgment plaintiff." *Id.* at 1334. Here, MMJK has maintained its right to institute an infringement cause of action against UBT for the patents that issue from one or more related continuation patent applications, having essentially identical if not identical disclosures as the '154 patent. As a result, MMJK's covenant not to sue is not sufficiently unconditional as to eliminate the controversy between the parties.

Accordingly, there still exists a "real and substantial" dispute between MMJK and UBT as to whether UBT will allegedly infringe any of MMJK's pending patent rights, such as any rights associated with the '795 application and U.S. Publication No. 20060281555 and whether the '154 patent or its progeny are invalid and/or unenforceable. Such contentions amount to a "definite and concrete [dispute], touching the legal relations of [these] parties having adverse legal interests." *Id.* Accordingly, this Court has subject matter jurisdiction over UBT's counterclaims.

This Court indicated that "[s]ubstantial questions exist about whether plaintiff is likely to overcome the obviousness defense. All or nearly all of the '154 patent claims appear to have been taught by the prior art and, in particular, the Bugsyclub 'Frequently Asked Questions' page." *See* Order Denying Plaintiff's Motion for Preliminary Injunction at 9 (DI No. 36). A finding of invalidity or unenforceability will directly impact MMJK's rights in related pending patent application(s), including MMJK's rights in

7

the '795 application. For example, if this Court adjudicates UBT's unenforceability claims and determines that the '154 patent was obtained by inequitable conduct, Federal Circuit precedent would require that any patent that issues from the related application, including the pending '795 application, would also be unenforceable. *Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804 (Fed. Cir. 1990) (inequitable conduct with respect to one or more patents in a family can infect related applications and patents). The rights related to the '154 patent and MMJK's rights to enforce them against UBT directly effect UBT's ability to do business. Accordingly, for each of these reasons, UBT will suffer plain legal prejudice if MMJK's motion to dismiss is granted and UBT's counterclaims are dismissed.

### 2. UBT'S LOSS OF CUSTOMERS AND REPUTATION CREATES AN ACTUAL CONTROVERSY

Additionally, UBT would face the loss of its customer base and reputation if MMJK were allowed to dismiss its complaint without UBT's counterclaims for non-infringement, invalidity and unenforceability being heard. MMJK has and will continue to assert that the '154 patent and its related pending application(s) provide an advantage in the marketplace and to investors and will use the '154 patent and its related application(s) as a way to further erode UBT's customer base and reputation.

In denying defendant's motion to dismiss, the District Court in *WS Packaging Group, Inc. v. Global Commerce Group, LLC*, noted that a "declaratory judgment plaintiff is only required to satisfy Article III, which includes standing and ripeness, by showing under 'all the circumstances' an actual or imminent injury caused by the defendant that can be redressed by judicial relief and that is of 'sufficient immediacy and reality' to warrant the issuance of a declaratory judgment." 2007 U.S. Dist. LEXIS 34880 (E.D. Wis. May 10, 2007) quoting *MedImmune*, 127 S. Ct. at 771. *See* Declaration of Steve P. Hassid ¶8, Exhibit B.

In reaching its conclusion to deny plaintiff's motion to dismiss, despite plaintiff's multiple waivers and covenant not to sue, the court in *WS Packaging Group, Inc.* concluded that an actual controversy existed between plaintiff and defendant because, in part, the defendant "faces the loss of its customer base and reputation in these circumstances." *Id.* at 13. Similarly, without adjudication of UBT's counterclaims, UBT faces the loss of its customer base and reputation. Accordingly, for this reason alone, MMJK's motion should be denied.

### B. UBT IS ENTITLED TO REASONABLE ATTORNEY'S FEES AND COSTS AS THE PREVAILING PARTY

This Court retains jurisdiction over the defendants' claims for prevailing party costs and attorneys' fees despite the dismissal of the underlying claim under Rule 41. *Highway Equipment Co. v. FECO, Ltd.*, 469 F.3d 1027, 1032-33 (Fed. Cir. 2006) (a court retains jurisdiction over a claim for attorney's fees under 35 U.S.C. § 285 even after voluntary dismissal). Accordingly, regardless of whether or not this Court grants MMJK's motion to dismiss, UBT is entitled to claim its prevailing party costs and attorneys' fees.

"[A] defendant was the prevailing party for purposes of costs under Rule 54 where the plaintiff voluntarily dismissed its case against one defendant with prejudice. *Id.* at 1035 (citing *Power Mosfet Techs., L.L.C v. Siemens AG*, 378 F.3d 1396, 1416 (Fed. Cir. 2004) (dismissal of a claim with prejudice is a judgment on the merits under the law of the Federal Circuit). Here, MMJK, having lost its preliminary injunction and realizing it cannot prevail at trial is requesting a dismissal of its claims with prejudice, which is a judgment on the merits. "Furthermore, we have treated the prevailing party issue under Rule 54 and 35 U.S.C. § 285 similarly. *Id.* (citing *Inland Steel*, 364 F.3d at 1319-20). Accordingly, UBT is entitled to prevailing party status under Rule 52 and 35 U.S.C. § 285.

The Court in *Highway Equipment Co.* "concluded that as a matter of patent law, the dismissal with prejudice, based on the covenant and granted pursuant to the district court's discretion under Rule 41(a)(2), has the necessary judicial imprimatur to constitute a judicially sanctioned change in the legal relationship of the parties, such that the district court properly could entertain [Defendant's] fee claim under 35 U.S.C. § 285." *Id.* (citing *Power Mosfet*, 378 F.3d at 1416 (holding that a patent infringement defendant obtained a disposition on the merits for purposes of Fed. R. Civ. P. 54(d)(1) where patentee voluntarily dismissed its infringement claim with prejudice); *Inland Steel*, 364 F.3d at 1321 (holding that a patent infringement defendant, who moved for dismissal after obtaining cancellation of patents through reexamination proceedings before the Patent and Trademark Office obtained a disposition on the merits in infringement action for purposes of obtaining attorney fees and costs)). Defendant's "prevailing party status is not predicated on whether Highway Equipment filed a Rule 41(a)(2) motion to dismiss with prejudice at the outset but is sufficiently based on its having filed a covenant not to sue with the court to end the litigation, resulting in a dismissal with prejudice." *Id.* at 1035-1036.

UBT'S OPPOSITION TO MMJK'S MOTION TO DISMISS COMPLAINT AND COUNTERCLAIMS
CASE NO. C 3:07-CV-03236-BZ

Defendant UBT has clearly prevailed on all the issues raised in the present case and successfully defeated MMJK's motion for preliminary injunction. MMJK has conceded defeat by voluntarily filing a covenant not to sue UBT on the '154 patent and requesting dismissal *with prejudice*. Accordingly, if this Court decides to grant MMJK's motion, this Court should condition that grant with a determination that UBT is the prevailing party and provide an award of costs and reasonable attorney's fees to UBT. Otherwise, plaintiff will be rewarded for abusing the litigation process by filing baseless lawsuits against competitors for the purpose of gaining an unfair competitive advantage.

Accordingly, UBT requests that MMJK's motion to dismiss be denied, and, in the alternative, that this Court determine UBT to be the prevailing party and award UBT costs and reasonable attorney's fees in conjunction with granting MMJK's motion to dismiss. UBT will then file documentation of the appropriate amount of its fees and costs.

## V. CONCLUSION

MMJK's request for dismissal is improper for each of the reasons mentioned above and UBT is entitled to reasonable costs and attorneys' fees as the prevailing party. Therefore, MMJK's motion to dismiss should be denied in its entirety. In the alternative, if this Court grants MMJK's motion to dismiss, this Court should also should determine UBT to be the prevailing party and award it costs and reasonable attorneys' fees.

DATED: October 22, 2007                    GREENBERG TRAURIG, LLP


By:____/S/_____
MATTHEW S. STEINBERG
STEVE P. HASSID
Attorneys for Defendant
Ultimate Blackjack Tour, LLC

# CERTIFICATE OF SERVICE

I, hereby certify that on October 22, 2007, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to the e-mail addresses denoted below:

DERGOSITS & NOAH LLP
Todd A. Noah (SBN 152328) (tnoah@dergnoah.com)
Paul K. Tomita (SBN 188096) (ptomita@dergnoah.com)
Four Embarcadero Center, Suite 1450
San Francisco, California 94111
Telephone: (415) 705-6377
Facsimile: (415) 705-6383

DATED: October 22, 2007                    GREENBERG TRAURIG, LLP


                                           By:____/S/_____
                                           MATTHEW S. STEINBERG
                                           STEVE P. HASSID
                                           Attorneys for Defendant
                                           Ultimate Blackjack Tour, LLC

1
UBT'S OPPOSITION TO MMJK'S MOTION TO DISMISS COMPLAINT AND COUNTERCLAIMS
CASE NO. C 3:07-CV-03236-BZ